**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| CAFE PLAZA DE MESILLA INC., | § | |
| | § | |
| *Plaintiff* | § | CIVIL ACTION NO. _____ |
| | § | |
| | § | |
| CONTINENTAL CASUALTY CO., | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Defendant* | § | |

## CLASS ACTION COMPLAINT

Plaintiff Cafe Plaza de Mesilla Inc., individually and on behalf of the other members of the below-defined nationwide Plaintiffs' classes (collectively, the "Class"), bring this class action against Defendant Continental Casualty Co. ("Continental") and would respectfully show as follows:

### I. NATURE OF THE ACTION

1.     Plaintiff Cafe Plaza de Mesilla Inc., located in Mesilla, New Mexico, is a full-service restaurant and espresso bar whose existence is now threatened because of COVID-19.

2.     Defendant is a subsidiary of CNA Financial Corp. CNA Financial Corp.'s property insurance operations are conducted primarily through Defendant.

3.     To protect its business in the event that it suddenly had to suspend operations for reasons outside of its control, Plaintiff purchased insurance coverage from Defendant, including special property coverage, as set forth in Defendant's Businessowner's Special Property Coverage Form (Form SB-146801-I) ("Special Property Coverage Form").

4.     Defendant's Special Property Coverage Form provides "Business Income" coverage, which promises to pay for loss due to the necessary suspension of operations.

5.     Defendant's Special Property Coverage Form also provides "Extra Expense"

coverage, which promises to pay the expenses incurred to minimize the suspension of business and to continue operations.

6.      Defendant's Special Property Coverage Form also provides "Civil Authority" coverage, which promises to pay for loss caused by the action of a civil authority that prohibits access to the insured premises.

7.      Defendant's Special Property Coverage Form, under a section entitled "Duties in the Event of Loss or Damage" mandates that Defendant's insured "must see that the following are done in the event of loss". . . [t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." This type of coverage has historically been known as "sue and labor" coverage or a "sue and labor" provision, and property policies have long provided coverage for these types of expenses.

8.      Unlike many policies that provide Business Income (also referred to as "business interruption") coverage, Defendant's Special Property Coverage Form does not include, and is not subject to, any exclusion for losses caused by viruses or communicable diseases.

9.      The insurance policy that Defendant sold to Plaintiff (which includes many different types of coverage in addition to the Special Property Coverage Form) includes a FUNGI / MOLD / MILDEW / YEAST / MICROBE endorsement. Importantly, that endorsement *only* modifies the insurance provided under the BUSINESSOWNERS LIABILITY COVERAGE section of the policy. By its express language, the FUNGI / MOLD / MILDEW / YEAST / MICROBE endorsement does not modify the Special Property Coverage Form of the policy:

| | |
|---|---|
| (2) Any fees, cost or expense (other than the first $25,000 of "property damage" as described above) arising out of or relating to the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of "fungi" or "microbes" by any insured or by anyone else.<br><br>**B.** The following exclusion is added to **SECTION B.1.q.** and B.1.r. EXCLUSIONS  Applicable to Business | the current or past presence of fungi. But fungi not include any fungi intended by the insured consumption.<br><br>"Microbe(s)" means any non-fungal microorganis non-fungal, colony-form organism that causes infe or disease. "Microbe" includes any sp mycotoxins, odors, or any other substances, prod or byproducts produced by, released by, or arising of the current or past presence of microbes. |

In other words, Defendant explicitly wrote the FUNGI / MOLD / MILDEW / YEAST / MICROBE endorsement so that it did *not* apply to the types of claims at issue in this lawsuit.

10.     Plaintiff was forced to suspend or reduce business due to COVID-19 (a.k.a. the "coronavirus" or "SARS-CoV-2") and the resultant orders issued by the Governor of New Mexico mandating the suspension of business like Plaintiff's for on-site services as well as to take necessary steps to prevent further damage and minimize the suspension of business and continue operations.

11.     Upon information and belief, Defendant has, on a widescale and uniform basis, refused to pay its insureds under its Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages for losses suffered due to COVID-19, any executive orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations. Indeed, Defendant has denied Plaintiff's claim under its policy.

## II. JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Defendant and at least one Class member are citizens of different states, and because (a) the Class consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

13.     Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in

this district, and because a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

## III. THE PARTIES

14.     Plaintiff Cafe Plaza de Mesilla Inc. is a New Mexico company with its principal place of business in Mesilla, New Mexico. Plaintiff owns and operates Cafe de Mesilla in Mesilla, New Mexico.

15.     Defendant Continental Casualty Co. is an Illinois company with its principal place of business in Chicago, Illinois. Defendant is authorized to write, sell, and issue insurance policies providing property and business income coverage in New Mexico. At all times material hereto, Defendant conducted and transacted business through the selling and issuing of insurance policies within New Mexico, including, but not limited to, selling and issuing property coverage to Plaintiff.

## IV. FACTUAL BACKGROUND

### A. The Special Property Coverage Form Protecting Plaintiff

16.     In return for the payment of a premium, Defendant issued Policy No. B4024523178 to Plaintiff for a policy period of February 11, 2020, to February 11, 2021, including a Businessowners Special Property Coverage Form. Plaintiff has performed all of its obligations under Policy No. B4024523178, including the payment of premiums. The Covered Property, with respect to the Special Property Coverage Form, is the Cafe de Mesilla restaurant at 2190 Avenida de Mesilla, Mesilla, New Mexico.

17.     Plaintiff's Special Property Coverage Form includes Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages.

18.     In many parts of the world, property insurance is sold on a specific peril basis. Such

policies cover a risk of loss if that risk of loss is specifically listed (e.g., hurricane, earthquake, H1N1). Most property policies sold in the United States, however, including those sold by Defendant, are all-risk property damage policies. These types of policies cover all risks of loss except for risks that are expressly and specifically excluded. In the Special Property Coverage Form provided to Plaintiff, under the heading "Covered Causes of Loss," Defendant agreed to pay for all risk of direct physical loss unless the loss is excluded or limited by the Special Property Coverage Form.

19.     In the Special Property Coverage Form, Defendant did not exclude or limit coverage for losses from viruses.

20.     Losses due to COVID-19 are a Covered Cause of Loss under the Defendant's insurance policies with the Special Property Coverage Form.

21.     In the Special Property Coverage Form, Defendant agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct physical loss or damage. A "partial slowdown or complete cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Defendant agreed to pay for loss of Business Income during the "period of restoration" that occurs within 12 consecutive months after the date of direct physical loss or damage.

22.     "Business Income" means the net income (or loss) before tax that Plaintiff would have earned if no physical loss or damage had occurred.

23.     The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, ISO, circulated

a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

24.     In the Special Property Coverage Form, Defendant also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

25.     "Extra Expense" means expenses "to avoid or minimize the 'suspension' of business and to continue 'operations,'" and to repair or replace property.

26.     Defendant also agreed to "pay for the actual loss of Business Income" that Plaintiff sustains and any Extra Expense caused by action of civil authority that prohibits access to the Covered Property when a Covered Cause of Loss causes damage to property other than the Covered Property and the civil authority prohibits access to the property and its surrounding area and takes such action in response to dangerous physical conditions.

27.     Defendant's Special Property Coverage Form, under a section entitled "Duties in the Event of Loss or Damage" mandates that Defendant's insured "must see that the following are done in the event of loss . . . [t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." This type of coverage has historically been known as "sue and labor" coverage or a "sue and labor" provision, and property policies have long provided coverage for these types of expenses.

28.     Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, Civil Authority, and Sue and Labor provisions of the Continental policy.

**B. The Covered Cause of Loss**

29.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Closure Orders").

30.     On March 11, 2020, New Mexico Governor Michelle Lujan Grisham issued Executive Order 2020-04, "Order Declaring a State of Public Health Emergency and Invoking the Powers Provided by All the Hazard Emergency Management Act and the Emergency Licensing Act."

31.     The purpose of Executive Order 2020-04 was to minimize the spread of COVID-19 pandemic and to minimize the attendant physical and economic harms. This order further proclaimed a public health emergency.

32.     On March 12, Kathyleen Kunkel, the Secretary of the State of New Mexico's Department of Health, limited public gathering of more than 100 people in order to protect the health, safety, and wellbeing of residents of the State of New Mexico from COVID-19.

33.     On March 24, 2020, Secretary Kunkel, prohibited public gatherings of more than 5 people. Under the order, restaurants like Plaintiff's and other places of public accommodation were prohibited from opening to the public for on-site consumption and were to remain closed for the duration of Executive Order 2020-04. The order was later extended through April 30, 2020.

34.     On April 6, 2020, Governor Lujan Grisham issued Executive Order 2020-022, in which extended the declared public health emergency until May 1, 2020.

*C. The Impact of COVID-19 and the Closure Orders*

35.     The presence of COVID-19 caused "direct physical loss of or damage to" each "Covered Property" under the Plaintiff's policy and the policies of the other Class members by denying use of and damaging the Covered Property and by causing a necessary suspension of operations during a period of restoration.

36.     The Closure Orders prohibited access to Plaintiff's and the other Class members' Covered Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss.

37.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiff and the other Class members lost Business Income and incurred Extra Expense.

38.     On or about March 18, 2020, Plaintiff submitted a claim of loss to Defendant under Plaintiff's policy.

39.     On April 14, 2020, Defendant denied Plaintiff's claims.

40.     Defendant has, on a widescale basis with many if not all of its insureds, refused to provide Business Income, Extra Expense, Civil Authority, and Sue and Labor coverage due to COVID-19 and the resultant executive orders by civil authorities that have required the suspension of business.

## V. CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

42.     Plaintiff seeks to represent nationwide classes defined as:

    a.   All persons and entities that: (a) had Business Income coverage under a property

insurance policy issued by Defendant; (b) suffered a suspension of business related to COVID-19, at the premises covered by their Continental property insurance policy; (c) made a claim under their property insurance policy issued by Defendant; and (d) were denied Business Income coverage by Defendant for the suspension of business resulting from the presence or threat of COVID-19 (the "Business Income Breach Class").

b.  All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Defendant; (b) suffered loss of Business Income and/or Extra Expense caused by action of a civil authority; (c) made a claim under their property insurance policy issued by Defendant; and (d) were denied Civil Authority coverage by Defendant for the loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Breach Class").

c.  All persons and entities that: (a) had Extra Expense coverage under a property insurance policy issued by Defendant; (b) sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Continental property insurance policy; (c) made a claim under their property insurance policy issued by Defendant; and (d) were denied Extra Expense coverage by Defendant despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense Breach Class").

d.  All persons and entities that: (a) had a Sue and Labor provision under a property insurance policy issued by Defendant; (b) sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Continental property insurance policy; (c) made a claim

under their property insurance policy issued by Defendant; and (d) were denied Sue

and Labor coverage by Defendant in connection with the suspension of business

caused by COVID-19 (the "Sue and Labor Breach Class").

e. All persons and entities with Business Income coverage under a property insurance

policy issued by Defendant that suffered a suspension of business due to COVID-

19 at the premises covered by the business income coverage (the "Business Income

Declaratory Judgment Class").

f. All persons and entities with Civil Authority coverage under a property insurance

policy issued by Defendant that suffered loss of Business Income and/or Extra

Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment

Class").

g. All persons and entities with Extra Expense coverage under a property insurance

policy issued by Defendant that sought to minimize the suspension of business in

connection with COVID-19 at the premises covered by their Continental property

insurance policy (the "Extra Expense Declaratory Judgment Class").

h. All persons and entities with a Sue and Labor provision under a property insurance

policy issued by Defendant that sought to prevent property damage caused by

COVID-19 by suspending or reducing business operations, at the premises covered

by their Continental property insurance policy (the "Sue and Labor Declaratory

Judgment Class").

43.     Excluded from each defined Class is Defendant and any of its members, affiliates,

parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities;

and the Court staff assigned to this case and their immediate family members. Plaintiff reserves

10

the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

44.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

45.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of each defined Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believe that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

46.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

      a.  whether Defendant issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class members;

      b.  whether the Class suffered a covered loss based on the common policies issued to members of the Class;

      c.  whether Defendant wrongfully denied all claims based on COVID-19;

      d.  whether Defendant's Business Income coverage applies to a suspension of business caused by COVID-19;

      e.  whether Defendant's Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of business as a

result of COVID-19;

f. whether Defendant's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

g. whether Defendant's Sue and Labor provision applies to require Defendant to pay for efforts to reduce damage caused by COVID-19;

h. whether Defendant has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss, or closures related to COVID-19 and the related closures; and

i. whether Plaintiff and the Class are entitled to an award of reasonable attorney fees, interest and costs.

47. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members are all similarly affected by Defendant's refusal to pay under its Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

48. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other Class members it seeks to represent. Plaintiff has retained counsel competent and experienced in complex litigation, including cases similar to this one where insurers breached contracts with their insured by failing to pay the amounts owed under their policy, and Plaintiff intends to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiff and its counsel.

49.     **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

50.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

51.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CLAIMS FOR RELIEF

### COUNT I: BREACH OF CONTRACT – BUSINESS INCOME COVERAGE
### (Claim Brought on Behalf of the Business Income Breach Class)

52.     Plaintiff repeats and realleges Paragraphs 1–51 as if fully set forth herein.

53.     Plaintiff brings this Count individually and on behalf of the other members of the

Business Income Breach Class.

54.    Plaintiff's Continental policy, as well as those of the other Business Income Breach Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Business Income Breach Class members' losses for claims covered by the policy.

55.    In the Special Property Coverage Form, Defendant agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

56.    A "partial slowdown or complete cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Defendant agreed to pay for loss of Business Income during the "period of restoration" "that occurs within 12 consecutive months after the date of direct physical loss or damage."

57.    "Business Income" means net income (or loss) before tax that Plaintiff and the other Business Income Breach Class members would have earned "if no physical loss or damage had occurred."

58.    COVID-19 caused direct physical loss and damage to Plaintiff's and the other Business Income Breach Class members' Covered Properties, requiring suspension of operations at the Covered Properties. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiff and the other Business Income Breach Class members' Continental policies.

59.    Plaintiff and the other Business Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

60.     By denying coverage for any Business Income losses incurred by Plaintiff and the other Business Income Breach Class members in connection with the COVID-19 pandemic, Defendant has breached its coverage obligations under the Policies.

61.     As a result of Defendant's breaches of the Policies, Plaintiff and the other Business Income Breach Class members have sustained substantial damages for which Defendant is liable in an amount to be established at trial.

### COUNT II: BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE
### (Claim Brought on Behalf of the Civil Authority Breach Class)

62.     Plaintiff repeats and realleges Paragraphs 1–51 as if fully set forth herein.

63.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Breach Class.

64.     Plaintiff's Continental policy, as well as those of the other Civil Authority Breach Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's and the other Civil Authority Breach Class members' losses for claims covered by the policy.

65.     Defendant promised to "pay for the actual loss of Business Income" sustained "and any Extra Expense caused by action of civil authority that prohibit access to" the Covered Property when a Covered Cause of Loss causes damage to property other than the Covered Property and the civil authority takes its action "in response to dangerous physical conditions."

66.     The Closure Orders triggered the Civil Authority provision under Plaintiff's and the other members of the Civil Authority Breach Class's Continental insurance policies.

67.     Plaintiff and the other members of the Civil Authority Breach Class have complied with all applicable provisions of the Policies, and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant has abrogated its

insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

68.     By denying coverage for any business losses incurred by Plaintiff and other members of the Civil Authority Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the Policies.

69.     As a result of Defendant's breaches of the Policies, Plaintiff and the other members of the Civil Authority Breach Class have sustained substantial damages for which Defendant is liable in an amount to be established at trial.

## COUNT III: BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE
### (Claim Brought on Behalf of the Extra Expense Breach Class)

70.     Plaintiff repeats and realleges Paragraphs 1–51 as if fully set forth herein.

71.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Breach Class.

72.     Plaintiff's Continental insurance policy, as well as those of the other Extra Expense Breach Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense Breach Class members' losses for claims covered by the policy.

73.     In the Special Property Coverage Form, Defendant agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

74.      "Extra Expense" means expenses "to avoid or minimize the suspension of business and to continue 'operations,'" and also includes expenses "to repair or replace property."

75.     Due to COVID-19 and the Closure Orders, Plaintiff and the other members of the Extra Expense Breach Class incurred Extra Expense at Covered Property.

76.     Plaintiff and the other members of the Extra Expense Breach Class have complied

with all applicable provisions of the Policies and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

77.     By denying coverage for any business losses incurred by Plaintiff and the other members of the Extra Expense Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the Policies.

78.     As a result of Defendant's breaches of the Policies, Plaintiff and the other members of the Extra Expense Breach Class have sustained substantial damages for which Defendant is liable in an amount to be established at trial.

## COUNT IV: BREACH OF CONTRACT – SUE AND LABOR COVERAGE
### (Claim Brought on Behalf of the Sue and Labor Breach Class)

79.     Plaintiff repeats and realleges Paragraphs 1–51 as if fully set forth herein.

80.     Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Breach Class.

81.     Plaintiff's Continental policy, as well as those of the other Sue and Labor Breach Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Sue and Labor Breach Class members' losses for claims covered by the policy.

82.     In the Special Property Coverage Form, Defendant agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

83.     In complying with the Closure Orders and otherwise suspending or limiting operations, Plaintiff and other members of the Sue and Labor Breach Class incurred expenses in connection with reasonable steps to protect Covered Property.

17

84.     Plaintiff and the other members of the Sue and Labor Breach Class have complied with all applicable provisions of the policy and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

85.     By denying coverage for any Sue and Labor expenses incurred by Plaintiff and the other members of the Sue and Labor Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the Policies.

86.     85. As a result of Defendant's breaches of the policies, Plaintiff and the other members of the Sue and Labor Breach Class have sustained substantial damages for which Defendant is liable in an amount to be established at trial.

### COUNT V: DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE
### (Claim Brought on Behalf of the Business Income Declaratory Judgment Class)

87.     Plaintiff repeats and realleges Paragraphs 1–51 as if fully set forth herein.

88.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

89.     Plaintiff's Continental policy, as well as those of the other Business Income Declaratory Judgment Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Business Income Declaratory Judgment Class members' losses for claims covered by the Policy.

90.     Plaintiff and the other Business Income Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

18

91.     Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

92.     An actual case or controversy exists regarding Plaintiff's and the other Business Income Declaratory Judgment Class members' rights and Defendant's obligations under the Policies to reimburse Plaintiff for the full amount of Business Income losses incurred by Plaintiff and the other Business Income Declaratory Judgment Class members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

93.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    a.  Plaintiff's and the other Business Income Declaratory Judgment Class members' Business Income losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

    b.  Defendant is obligated to pay Plaintiff and the other Business Income Declaratory Judgment Class members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VI: DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

94.     Plaintiff repeats and realleges Paragraphs 1–51 as if fully set forth herein.

95.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

96.     Plaintiff's Continental policy, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the Policy.

97.     Plaintiff and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

98.     Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

99.     An actual case or controversy exists regarding Plaintiff's and the other Civil Authority Declaratory Judgment Class members' rights and Defendant's obligations under the Policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

100.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

      a. Plaintiff's and the other Civil Authority Declaratory Judgment Class members' Civil Authority losses incurred in connection with the Closure Orders and the

necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

b. Defendant is obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic

## COUNT VII: DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE
### (Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)

101.    Plaintiff repeats and realleges Paragraphs 1–51 as if fully set forth herein.

102.    Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

103.    Plaintiff's Continental insurance policy, as well as those of the other Extra Expense Declaratory Judgment Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members' losses for claims covered by the Policy.

104.    Plaintiff and the other Extra Expense Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

105.    Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

21

106.    An actual case or controversy exists regarding Plaintiff's and the other Extra Expense Declaratory Judgment Class members' rights and Defendant's obligations under the Policies to reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of Extra Expense losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

107.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

a.  Plaintiff's and the other Extra Expense Declaratory Judgment Class members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

b.  Defendant is obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VIII: DECLARATORY JUDGMENT – SUE AND LABOR COVERAGE**
**(Claim Brought on Behalf of the Sue and Labor Declaratory Judgment Class)**

108.    Plaintiff repeats and realleges Paragraphs 1–51 as if fully set forth herein.

109.    Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Declaratory Judgment Class.

110.    Plaintiff's Continental insurance policy, as well as those of the other Sue and Labor Declaratory Judgment Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Sue and Labor Declaratory Judgment

Class members' reasonably incurred expenses to protect Covered Property.

111.    Plaintiff and the other Sue and Labor Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

112.    Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

113.    An actual case or controversy exists regarding Plaintiff and the other Sue and Labor Declaratory Judgment Class members' rights and Defendant's obligations under the policies to reimburse Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount Plaintiffs and the other members of the Sue and Labor Declaratory Judgment Class reasonably incurred to protect Covered Property from further damage by COVID-19.

114.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Sue and Labor Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

   a.   Plaintiff and the other Sue and Labor Declaratory Judgment Class members reasonably incurred expenses to protect Covered Property from further damage by COVID-19 are insured losses under their policies; and

   b.   Defendant is obligated to pay Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount of the expenses they reasonably incurred to protect Covered Property from further damage by COVID-19.

## IX. REQUEST FOR RELIEF

115.    WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

    a.   Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiff as Class representatives, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

    b.   Entering judgment in favor of Plaintiff and the members of the Business Income Breach Class, the Civil Authority Breach Class, and the Extra Expense Breach Class, and awarding damages for breach of contract in an amount to be determined at trial;

    c.   Entering declaratory judgments in favor of Plaintiff and the members of the Business Income Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, and the Extra Expense Declaratory Judgment Class as follows:

        i.   Business Income, Civil Authority, Contamination, Extra Expense, and Sue and Labor losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

        ii.   Defendant is obligated to pay for the full amount of the Business Income, Civil Authority, and Extra Expense losses incurred and to be incurred related to COVID-19, the Closure Orders, and the necessary interruption of their businesses stemming from the COVID-19 pandemic;

    d.   Ordering Defendant to pay both pre- and post-judgment interest on any amounts;

    e.   Ordering Defendant to pay attorneys' fees and costs of suit; and

f.   Ordering such other and further relief as may be just and proper.

## X. JURY DEMAND

116.   Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: April 20, 2020

Respectfully submitted,

**DURHAM, PITTARD & SPALDING, LLP**

/s/*Justin R. Kaufman*
Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
505 Cerrillos Road, Suite A209
Santa Fe, New Mexico  87501
Telephone:     (505) 986-0600
Facsimile:     (505) 986-0632
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

Robert E. Ammons (*pro hac vice pending*)
Patrick A. Luff (*pro hac vice pending*)
Miriah A. Soliz (*pro hac vice pending*)
**THE AMMONS LAW FIRM, LLP**
3700 Montrose Blvd.
Houston, Texas 77006
Telephone:     (713) 523-1606
Facsimile:     (713) 523-4159
rob@ammonslaw.com
patrick.luff@ammonslaw.com
miriah@ammonslaw.com

***Counsel for Plaintiffs and the Proposed Classes***