# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CAFE PLAZA DE MESILLA INC.,

                                        Plaintiff,

            - against -

CONTINENTAL CASUALTY CO.,

                                        Defendant.

Civil Action No. 2:20-cv-00354-KWR-KRS

**ORAL ARGUMENT REQUESTED**

**DEFENDANT CONTINENTAL CASUALTY COMPANY'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

    A.    The Parties ......................................................................................... 4

    B.    Plaintiff's Alleged Business Losses and the State's Closure Orders ......................... 4

    C.    The Policy ......................................................................................... 6

    D.    Plaintiff's Insurance Claim and This Lawsuit ........................................... 10

ARGUMENT ..................................................................................................... 12

I.     Legal Standard ..................................................................................... 12

II.    The Policy Does Not Provide Coverage for Plaintiff's Alleged Losses. ..................... 13

    A.    The Business Income and Extra Expense Claims Should Be Dismissed Because the Cafe Did Not Suffer Direct Physical Loss or Damage. ..................... 14

    B.    Plaintiff's Civil Authority Claims Should Be Dismissed Because Plaintiff Cannot Allege Any of the Elements of Those Claims. ....................................... 19

    C.    The So-Called "Sue and Labor" Provision Does Not Confer Coverage under the Policy. ..................................................................................... 23

    D.    Because Plaintiff Has Not Alleged a Claim within the Policy's Grant of Coverage, the Purported Absence of a Virus Exclusion Is Irrelevant. ................. 25

    E.    The Claims for Declaratory Relief Should Be Dismissed as Duplicative. .............. 26

CONCLUSION ................................................................................................... 27

# **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Abner, Herrman & Brock, Inc.* v. *Great Northern Ins. Co.*,
    308 F. Supp. 2d 331 (S.D.N.Y. 2004)..............................................................21, 22

*Am. Polysteel, L.L.C.* v. *Ins. Co. of N. Am.*,
    No. CIV 01-133 LFG, 2001 WL 37124939 (D.N.M. Aug. 10, 2001)...............12, 26

*Ashcroft* v. *Iqbal*,
    556 U.S. 664 (2009)..............................................................................................12

*Battishill* v. *Farmers Alliance Ins. Co.*,
    127 P.3d 1111 (N.M. 2006) ..............................................................................13, 25

*Bhd. Mut. Ins. Co.* v. *Allstate Ins. Co.*,
    No. CIV 00-415 MV/LFG, 2000 WL 36739597 (D.N.M. Dec. 21, 2000)...........25

*Bristol-Myers Squibb Co.* v. *Superior Court of California*,
    137 S. Ct. 1773 (2017)..........................................................................................12

*Cruson* v. *Jackson Nat'l Life Ins. Co.*,
    954 F.3d 240 (5th Cir. 2020) ................................................................................12

*Dockery* v. *Allstate Ins. Co.*,
    No. 19-cv-0190-RB-GJF, 2020 WL 59885 (D.N.M. Jan. 6, 2020).......................13

*Evanston Ins. Co.* v. *Desert State Life Mgmt.*,
    No. CIV 18-0654 JB/KK, 2020 WL 249023 (D.N.M. Jan. 16, 2020)..............13, 25

*Fay* v. *Hartford Ins. Co.*,
    Civ. No. 17-1054 MV/SCY, 2019 WL 1014791 (D.N.M. Mar. 4, 2019) ................3

*GFF Corp.* v. *Assoc. Wholesale Grocers, Inc.*,
    130 F.3d 1381 (10th Cir. 1997) ..........................................................................3, 26

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP* v. *Nat'l Fire Ins.*
    *Co. of Hartford*, No. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007)....21

*Lopez* v. *Found. Reserve Ins. Co., Inc.*,
    98 N.M. 166, 646 P.2d 1230 (1982) ......................................................................13

*Mama Jo's, Inc.* v. *Sparta Ins. Co.*,
    No. 17-cv-23362-KMM, 2018 WL 3412974 (S.D. Fla. June 11, 2018) ...........15, 17

*Mastellone* v. *Lightning Rod Mut. Ins. Co.*,
    884 N.E.2d 1130 (Ohio Ct. App. 2008)...................................................................17

*Molock* v. *Whole Foods Market Grp. Inc.*,
    952 F.3d 293 (D.C. Cir. 2020) ...........................................................................12

*Mortensen* v. *Liberty Mut. Ins.*,
    No. CV 18-1121 KK/SMV, 2019 WL 1571730 (D.N.M. Apr. 11, 2019).............................14

*Narricot Indus., Inc.* v. *Fireman's Fund Ins. Co.*,
    No. CIV.A 01-4679, 2002 WL 31247972 (E.D. Pa. Sept. 30, 2002) .....................................20

*New Mem'l Assocs.* v. *Credit Gen. Ins. Corp.*,
    973 F. Supp. 1027 (D.N.M. 1997) .....................................................................3, 14

*Newman Myers Kreines Gross Harris, P.C.* v. *Great N. Ins. Co.*,
    17 F. Supp. 3d 323 (S.D.N.Y. 2014)..........................................................15, 17, 18

*O'Toole* v. *Northrop Grumman Corp.*,
    499 F.3d 1218 (10th Cir. 2007) ...........................................................................4

*Phila. Parking Auth.* v. *Fed. Ins. Co.*,
    385 F. Supp. 2d 280 (S.D.N.Y. 2005)...................................................................18

*Port Auth. of N.Y. & N.J.* v. *Affiliated FM Ins. Co.*,
    311 F.3d 226 (3d Cir. 2002)..............................................................................15

*RK Mech. Inc.* v. *Travelers Prop. Cas. Co. of Am.*,
    944 F. Supp. 2d 1013 (D. Colo. 2011)..............................................................23, 24

*Romero* v. *Hartford Cas. Ins. Co.*,
    No. 1:16-cv-1335-RB-LF, 2017 WL 8220447 (D.N.M. 2017) .............................................18

*S. Hospitality, Inc.* v. *Zurich Am. Ins. Co.*,
    393 F.3d 1137 (10th Cir. 2004) ....................................................................15, 21

*S. Texas Med. Clinics, P.A.* v. *CNA Fin. Corp.*,
    No. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008)...............................................20

*Ski Chalet Village Owners Club Inc.* v. *Employers Mutual Casualty Co.*,
    No. 3:16-CV-20-TAV-HBG, 2016 WL 6892759 (E.D. Tenn. Nov. 22, 2016)................23, 24

*Ski Shawnee, Inc.* v. *Commonwealth Ins. Co.*,
    No. 3:09-CV-02391, 2010 WL 2696782 (M.D. Pa. July 6, 2010) ...................................21, 23

*Smith* v. *Auto-Owners Ins. Co.*,
    No. 15-cv-1153 SMV/GBW, 2017 WL 3223952 (D.N.M. July 17, 2017) ..............................26

*Social Life Magazine, Inc.* v. *Sentinel Ins. Co. Ltd.*,
No. 20 Civ. 3311 (VEC) (S.D.N.Y. May 14, 2020) ............................................................17

*Syufy Enters.* v. *Home Ins. Co. of Indiana*,
No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) ...............................19, 21, 22

*Taos Ski Valley, Inc.* v. *Nova Cas. Co.*,
153 F. Supp. 3d 1351 (D.N.M. 2015),
*aff'd*, 705 F. App'x 749 (10th Cir. 2017).........................................................................13, 14

*Tapia* v. *City of Albuquerque*,
10 F. Supp. 3d 1207 (D.N.M. 2014) ...............................................................................12, 26

*United Air Lines, Inc.* v. *Ins. Co. of State of Pa.*,
439 F.3d 128 (2d Cir. 2006).............................................................................................20, 23

*Wash. Mut. Bank* v. *Commonwealth Ins. Co.*,
133 Wash. App. 1031, 2006 WL 1731318 (2006)..................................................................24

STATUTES AND RULES

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1, 3, 12

OTHER AUTHORITIES

*Aerosol and Surface Stability of SARS-CoV-2 as Compared with SARS-CoV-1*,
N. Engl. J. Med. 2020, 382:1564–67,
https://www.nejm.org/doi/full/10.1056/NEJMc2004973 ......................................................16

*Black's Law Dictionary* (11th ed. 2019)...............................................................................14, 24

*CDC Cleaning and Disinfection for Community Facilities*,
https://www.cdc.gov/coronavirus/2019-ncov/community/
organizations/cleaning-disinfection.html (last visited June 14, 2020)...................................17

*CDC Reopening Guidance for Cleaning and Disinfecting Public Spaces,
Workplaces, Businesses, Schools, and Homes*, cdc.gov/coronavirus/2019-
ncov/community/reopen-guidance.html (last visited June 14, 2020) .....................................16

*CDC Frequently Asked Questions, Cleaning and Disinfection*,
https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Cleaning-and-
Disinfection (last visited June 14, 2020) .........................................................................16, 17

10A Steven Plitt, et al., *Couch on Insurance* §§ 148.46, 148.52, 152.22
(3d ed. 2020) ...............................................................................................................13, 15, 19

Defendant Continental Casualty Company ("Continental") respectfully moves to dismiss with prejudice all claims asserted against it in the Amended Class Action Complaint (the "Complaint" or "Am. Compl.") of Plaintiff Cafe Plaza de Mesilla Inc. ("Plaintiff" or the "Cafe") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Complaint fails to state a claim upon which relief may be granted because the unambiguous terms of Plaintiff's insurance policy with Continental do not provide coverage.  The grounds for this motion are further provided in this memorandum of law and attached exhibits, in the Complaint, and upon such further evidence or argument as the Court permits.

## PRELIMINARY STATEMENT

This is an insurance coverage action arising out of the COVID-19 pandemic. Plaintiff, a restaurant and espresso bar, alleges that its property insurance policy with Continental provides coverage for business interruption losses purportedly incurred as a result of COVID-19 and the resulting orders of the State of New Mexico mandating social distancing requirements and the closure of non-essential businesses.  After Continental denied Plaintiff's insurance claim, Plaintiff filed this putative class action asserting claims for breach of contract and declaratory relief, based on the terms of its policy affording Business Income, Extra Expense, Civil Authority, and what Plaintiff calls "Sue and Labor" coverage.  Although recent events have disrupted businesses around the world, including Plaintiff's Cafe, the unambiguous terms of Plaintiff's policy do not provide coverage for Plaintiff's alleged losses.

*First*, Plaintiff's claims for Business Income and Extra Expense coverage fail because the plain language of the policy provides that such coverage applies *only* when the suspension of Plaintiff's operations is caused by "direct physical loss of or damage to" property

1

at the insured's premises.  The Complaint does not plausibly allege that property at the Cafe suffered *any* direct physical loss or damage, and Plaintiff reported no such damage to Continental when it provided notice of its claim.  Without this required trigger for coverage, no recovery is available.

*Second*, Plaintiff's Civil Authority claims fail because the Complaint does not plead either of the two prerequisites for coverage:  the orders at issue were not enacted because of direct physical loss of or damage to property, and they did not prohibit access to the Cafe.  To the contrary, the orders expressly permitted restaurants like the Cafe to remain open for carry-out and delivery service.  As the Cafe's own website and Facebook page showed, it was Plaintiff, not a civil authority, that closed the Cafe, in order to protect health and safety and "flatten the curve." (Exs. C, D.)

*Third*, Plaintiff is not entitled to what it calls "Sue and Labor coverage," which is not insurance coverage at all, but an obligation of the insured to mitigate covered losses.  The relevant provisions of the policy require Plaintiff, if it experiences a covered loss, to protect its property from further damage, and permit it to recover expenses incurred in doing so.  Here, because there was no covered cause of loss and no damaged property to protect from further damage, even if Plaintiff had incurred expenses (and none are alleged, except in conclusory terms), Continental is not required to repay them.

For all these reasons, Plaintiff is not entitled to coverage under the policy, and the Complaint should be dismissed with prejudice.

**STATEMENT OF FACTS**

The facts alleged or incorporated by reference in the Complaint, or of which the Court may take judicial notice on this motion, are summarized below.

Continental respectfully requests that the Court take judicial notice of Plaintiff's insurance policy with Continental (Ex. A), Continental's April 14, 2020 letter to Plaintiff setting forth its coverage determination (Ex. B), excerpts from the Cafe's Facebook page (Ex. C), a screenshot of the Cafe's website taken on April 20, 2020 (Ex. D), and the State closure orders (Exs. E–K).  On a motion to dismiss, the Court "may consider documents referenced in the complaint but not attached to it without converting a motion to dismiss into one for summary judgment. . . .  For this exception to Rule 12(b)(6) to apply, the document must be referred to by the complaint and must be integral and central to the plaintiff's claim. . . . The exception encompasses documents quoted, relied upon, or incorporated by reference in the complaint as well as official public records pertinent to the plaintiff's claims, so long as the documents are of unquestioned authenticity."  *New Mem'l Assocs.* v. *Credit Gen. Ins. Corp.*, 973 F. Supp. 1027, 1029 (D.N.M. 1997) (citations omitted) (relying on underlying insurance policy attached to motion to dismiss); *see also Fay* v. *Hartford Ins. Co.*, Civ. No. 17-1054 MV/SCY, 2019 WL 1014791, at *3 (D.N.M. Mar. 4, 2019) ("Because the insurance policy language is 'referred to by the complaint and [is] integral to and central to the plaintiff's claim,' the Court may rely upon it without converting the present motion into a motion for summary judgment.") (quoting *New Mem'l Assocs.*, 973 F. Supp. at 1029); *GFF Corp.* v. *Assoc. Wholesale Grocers, Inc.*, 130 F. 3d 1381, 1384 (10th Cir. 1997) (if document is referred to in complaint and is central to plaintiff's claim, defendant may submit "indisputably authentic copy to the court to be considered on a

motion to dismiss").  Here, Plaintiff's policy, Continental's denial of Plaintiff's claim, and the closure orders are unquestionably referred to by the Complaint and integral and central to Plaintiff's claims.  Plaintiff's Facebook page and website are publicly available, of unquestioned authenticity, relevant to Plaintiff's claims, and proper subjects for judicial notice.  *See O'Toole* v. *Northrop Grumman Corp.*, 499 F.3d 1218, 1224–25 (10th Cir. 2007) (abuse of discretion in trial court's failure to take judicial notice of party's website reflecting historical earnings).

### A.    The Parties

Plaintiff is a "full-service restaurant and espresso bar" located in Mesilla, New Mexico.  (Am. Compl. ¶¶ 1, 14.)  Defendant is an Illinois insurance company that writes, sells, and issues insurance policies, including in New Mexico.  (*Id.* ¶ 15.)

### B.    Plaintiff's Alleged Business Losses and the State's Closure Orders

Plaintiff alleges loss of business income due to COVID-19 and the resultant orders issued by the State of New Mexico to stem the spread of COVID-19.  (*Id.* ¶¶ 10, 29–40.) Between March 11, 2020 and April 30, 2020, New Mexico Governor Michelle Lujan Grisham and Department of Health Cabinet Secretary Kathyleen Kunkel issued several orders to address the public health emergency caused by COVID-19 (the "Closure Orders").  (*Id.* ¶¶ 10, 29–34.) The Closure Orders have, among other things, closed non-essential workplaces and limited large gatherings, but have permitted certain essential businesses, such as restaurants like the Cafe, to remain open to customers.  The following orders are relevant to Plaintiff's claims:

On March 11, 2020, the date the first confirmed case of COVID-19 was reported in New Mexico, Governor Lujan Grisham issued Executive Order 2020-004, which "proclaim[ed] a public health emergency" in the State.  (*Id.* ¶¶ 30–31.)  The Order declared that

it was "necessary for all branches of State government to take immediate action to minimize the spread of COVID-19 and to minimize the attendant physical and economic harms."  (Ex. E at 2.)

On March 12, 2020, Secretary Kunkel issued a Public Health Emergency Order prohibiting "Mass Gatherings" of 100 or more individuals.  (Am. Compl. ¶ 32.)  Specifically excluded from the definition of "Mass Gathering" were "restaurants and bars" "operating during 'normal business hours.'"  (Ex. F at 2.)

On March 16, 2020, Secretary Kunkel issued an Amended Public Health Emergency Order providing that all restaurants, bars, breweries, eateries, and other food service establishments shall operate at no greater than 50 percent of maximum occupancy and no greater than 50 percent of seating capacity.  (Ex. G at 3.)

On March 19, 2020, Secretary Kunkel issued an Amended Public Health Emergency Order prohibiting "Mass Gatherings," defined as any gathering bringing together ten or more people "in a single room or connected space," but not including "businesses . . . or other entities engaged in commercial, industrial, charitable, or professional activities."  (Ex. H at 3.) The order defined "local food vendors" as essential services and permitted restaurants and other food establishments to provide carry-out and delivery service.  (*Id.* at 2–3.)

On March 23, 2020, Secretary Kunkel issued a new Public Health Emergency Order that directed all businesses, except those identified as "essential businesses," to reduce their in-person workforces by 100 percent.  (Am. Compl. ¶ 33; Ex. I at 4.)  Restaurants were defined as "essential businesses" under the Order and were, again, permitted to remain open for delivery or carry-out service.  (Am. Compl. ¶ 33; Ex. I at 4.)

On April 6, 2020, Governor Lujan Grisham issued Executive Order 2020-022, which extended the Public Health Emergency through April 30 (Am. Compl. ¶ 34; Ex. J at 3), and Secretary Kunkel issued an amended Public Health Emergency Order extending the March 23 Order to April 30 (Am. Compl. ¶ 33; Ex. K at 7).

Although Plaintiff omits this fact from the Complaint, when Plaintiff submitted its claim to Continental, it advised that the Cafe closed its doors on March 19, 2020, and it remained closed for approximately two months even though the Closure Orders permit restaurants like the Cafe to offer carry-out and delivery service.[1]  (Ex. B.)  A message to customers on the Cafe's website and its Facebook page stated:  "In an effort to keep our valued clientele, staff and our families safe during the current COVID-19 outbreak and to do our part in contributing to flatten the curve, we have decided to close the restaurant until further notice."  (Exs. C–D.)

The Complaint does not allege that the coronavirus that causes COVID-19 was present *at the insured's premises* or even that any employee or customer of the Cafe was diagnosed with COVID-19.  Nonetheless, Plaintiff claims that the "presence of COVID-19 caused 'direct physical loss of or damage to'" the insured's premises "by denying use of and damaging" the property and "by causing a necessary suspension of operations during a period of restoration."  (Am. Compl. ¶ 35.)  Plaintiff further alleges that the Closure Orders prohibited access to Plaintiff's property in response to "dangerous physical conditions."  (*Id.* ¶ 36.)

C.    **The Policy**

Plaintiff purchased from Continental a CNA Connect Policy, Policy No. B 4024523178, for the period February 11, 2020 through February 11, 2021 (the "Policy").  (Am.

---

[1]    The Cafe's Facebook page indicates that, as of May 28, 2020, the Cafe had reopened for curbside pickup and that it is now open for patio and limited dine-in seating.  (Ex. C.)

Compl. ¶ 16; Ex. A.)  The Policy provides both property coverage and liability coverage.  The property coverage, as set forth in the Businessowners Special Property Coverage Form (Form SB-146801-1), and its incorporated Declarations, Endorsements, and Exclusions are relevant to Plaintiff's claims here.  (Am. Compl. ¶¶ 3, 16.)  Specifically, Plaintiff alleges that the Policy includes four grants of "coverage" that should provide compensation for Plaintiff's alleged business losses:  Business Income, Extra Expense, Civil Authority, and Sue and Labor.  (*Id.* ¶¶ 16–17.)

First, Business Income coverage, as set forth in the Business Income and Extra Expense Endorsement, allows Plaintiff to recover business income lost as a result of the suspension of its operations caused by "direct physical loss of or damage" to Plaintiff's premises insured under the Policy (here, Plaintiff's Cafe).  The relevant term of the Policy provides:

> b.  We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration."  The "suspension" must be caused by direct physical loss of or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss.

(Ex. A at 38.)[2]  "[S]uspension" means the "partial or complete cessation of [the insured's] business activities" (Ex. A at 35), and "operations" means "the type of [the insured's] business activities occurring at the described premises and tenantability of the described premises" (*id.* at 33).  Plaintiff alleges that it experienced a "suspension" of its operations, and lost business income, as a result of "the presence of COVID-19 and the Closure Orders."  (Am. Compl. ¶¶ 21, 35, 37.)  Plaintiff further asserts that the "presence of COVID-19 caused 'direct physical loss of

---

[2]   For ease of the Court's reference, we have added consecutive pagination ("Ex. A Page ___") in the upper right-hand corner of the Policy.

or damage'" to the Cafe, but does not specify the nature of such damage.  (*Id.* ¶ 35.)  In addition, the Complaint pleads generally that the "presence of virus or disease *can constitute* physical damage to property."  (*Id.* ¶ 23 (emphasis added); *see also id.* ¶¶ 35, 37.)

        *Second*, Extra Expense coverage allows Plaintiff to recover reasonable and necessary expenses incurred during the "period of restoration" that would not have been incurred if there had been no direct physical loss of or damage to the insured's property from a covered cause of loss.  The relevant term of the Policy provides:

> a.  Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.
>
> b.  We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> > (1)  Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations; or
> >
> > (2) Minimize the "suspension" of business if you cannot continue "operations."

(Ex. A at 39.)  Plaintiff alleges that it "incurred Extra Expense" as a result of "the presence of COVID-19 and the Closure Orders."  (Am. Compl. ¶ 37.)  For these purposes, the "period of restoration" means the date that "[b]egins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and [e]nds on the earlier of:  (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a

new permanent location." (Ex. A at 33.) A "Covered Cause of Loss" means "RISKS OF DIRECT PHYSICAL LOSS" unless excluded or limited under the Policy. (*Id.* at 17–18.)

*Third*, Civil Authority coverage allows Plaintiff to recover its lost Business Income and Extra Expense when a civil authority—*i.e.*, a government entity—prohibits access to Plaintiff's property (here, the Cafe) because of "direct physical loss of or damage to" property at locations *other than* the insured's premises. This coverage would, for example, cover business interruption if a government entity prohibited access to the insured's premises as a result of a fire in a building across the street from the premises. The relevant term of the Policy provides:

> When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

(Ex. A at 64.) Plaintiff alleges that the Closure Orders prohibited access to its property and the area immediately surrounding it in response to dangerous physical conditions. (Am. Compl. ¶¶ 26, 36.)

*Fourth*, although characterized throughout the Complaint as a grant of "coverage," the so-called "Sue and Labor" provision, contained in the Property Loss Conditions section of the Policy, actually imposes duties on the *insured* in the event of a covered loss. The relevant term of the Policy provides:

> a. [The insured] must see that the following are done in the event of loss or damage to Covered Property. . . .
>
> (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to

> protect the Covered Property, for consideration in the settlement of the claim. . . . However, we will not pay for any loss or damage from a cause of loss that is not a Covered Cause of Loss.

(Ex. A at 24.)  The Complaint alleges that, by complying with the Closure Orders and otherwise suspending or limiting its operations, Plaintiff incurred unspecified expenses in connection with reasonable steps it took to protect its property.  (Am. Compl. ¶ 83; *see also id.* ¶ 27.)

### D.  <u>Plaintiff's Insurance Claim and This Lawsuit</u>

On March 18, 2020, Plaintiff submitted a notice of claim to Continental based on a loss of business income in connection with Governor Lujan Grisham's March 11, 2020 Executive Order.  (Am. Compl. ¶ 38; Ex. B at 1.)  In a phone call to Continental on March 20, Plaintiff advised Continental that it had "closed [the Cafe] on March 19, 2020, in response to the [March 11, 2020] Order,"[3] and that "none of [the Cafe's] employees had reported sickness at this time."  (*Id.*)  Plaintiff subsequently provided a copy of a March 18, 2020 update notice concerning the Governor's orders to Continental.  (*Id.*)  Continental investigated the claim and denied it by a letter dated April 14, 2020.  (*See* Am. Compl. ¶ 39; Ex. B.)

In denying the claim, Continental explained that the Policy did not provide coverage for Plaintiff's insurance claim for several reasons.  First, Plaintiff had "not reported any 'direct physical loss or damage' to [the Cafe's] business personal property."  (*Id.* at 2.)  Because, based on the information Plaintiff had provided to Continental, "there [was] no indication that [the Cafe's] operations were suspended as a result of direct physical loss of or damage to property" at the insured's premises, and "the Policy requires direct physical loss of or damage to

---

[3]   Plaintiff's contemporaneous public statements to its customers indicate that it reduced its hours of operation on March 19, 2020 and, on March 24, 2020, it posted a message to the Cafe's Facebook page that the restaurant would be closed until further notice.  (*See* Ex. C.)

property at the described premises to invoke coverage," the Policy "does not provide coverage for [Plaintiff's] claim under the Business Income and Extra Expense provisions of the Policy." (*Id.* at 3.)  Further, Continental determined that, "[b]ecause the [March 11, 2020] Order was not issued due to direct physical loss of or damage to property and did not prohibit access to the [insured's] premises, the Policy does not provide coverage under the Civil Authority endorsement."  (*Id.* at 4.)  Finally, Continental determined that, even if there had been direct physical loss of or damage to property, the Policy contained "exclusions that might bar coverage for [Plaintiff's] claim," including but not limited to the Policy's exclusions for loss or damage caused by or resulting from consequential loss and contamination.  (*Id.*)  Plaintiff never presented a claim for what it now calls "Sue and Labor coverage" or evidence of any expenses for which it now seeks reimbursement.

On April 20, 2020, Plaintiff filed this lawsuit—a purported nationwide class action brought on behalf of all Continental policyholders, without regard for the insured's base policy form, business type, or geographic location.  (Am. Compl. ¶¶ 41–51.)  The Complaint asserts eight claims:  four breach-of-contract claims (*id.* ¶¶ 52–86) and four declaratory judgment claims (*id.* ¶¶ 87–114).  The breach-of-contract counts and declaratory judgment counts assert essentially the same claims:  the breach counts allege that, in denying coverage, Continental breached, respectively, the Business Income, Civil Authority, Extra Expense, and Sue and Labor terms of the Policy and putative class members' policies (Counts I–IV), while the declaratory judgment counts seek declarations that Plaintiff's losses, and those of the putative class members, stemming from the Closure Orders and the interruption of their businesses due to the

COVID-19 pandemic are insured losses under those same provisions of their respective policies (Counts V–VIII).

## ARGUMENT

### I.   <u>Legal Standard</u>

Complaints must allege facts sufficient to "state a claim to relief that is plausible on its face." *Tapia* v. *City of Albuquerque*, 10 F. Supp. 3d 1207, 1247 (D.N.M. 2014) (citing *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 554, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft* v. *Iqbal*, 556 U.S. 664, 678 (2009). When the allegations of a complaint are fatally flawed, such that a plaintiff's legal theory will necessarily fail despite any future evidence a plaintiff might present, the complaint must be dismissed. *See Am. Polysteel, L.L.C.* v. *Ins. Co. of N. Am.*, No. CIV 01-133 LFG, 2001 WL 37124939, at *2 (D.N.M. Aug. 10, 2001) (citing Fed. R. Civ. P. 12(b)(6)).

For purposes of this motion, Continental accepts as true the well-pleaded allegations of the Complaint and the facts in documents incorporated by reference therein or integral to Plaintiff's claims. Even taking Plaintiff's factual and non-conclusory allegations as true, however, the unambiguous terms of the Policy do not permit recovery, and the Complaint should be dismissed.[4]

---

[4]   Continental does not consent to personal jurisdiction in this Court as to the claims of putative class members that are not residents of the State of New Mexico. *See Bristol-Myers Squibb Co.* v. *Superior Court of California*, 137 S. Ct. 1773 (2017). Moving to dismiss the putative class members' claims at this stage would be premature, however, because those putative class members are not yet parties to the litigation. *See Cruson* v. *Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 251 (5th Cir. 2020) (class certification made personal jurisdiction argument available and thus failure to raise defense earlier did not waive right); *Molock* v. *Whole Foods Market Grp. Inc.*, 952 F.3d 293, 297–98 (D.C. Cir. 2020) (citing *Smith* v. *Bayer Corp.*, 564 U.S. 299 (2011)). Continental reserves the right to challenge this Court's jurisdiction

**II.**      **The Policy Does Not Provide Coverage for Plaintiff's Alleged Losses.**

It is the insured's burden to show that it has suffered a loss that falls within its policy's grant of coverage.  *See* 10A Steven Plitt, et al., *Couch on Insurance* § 148:52 (3d ed. 2020); *Evanston Ins. Co.* v. *Desert State Life Mgmt.*, No. CIV 18-0654 JB/KK, 2020 WL 249023, at *21 (D.N.M. Jan. 16, 2020); *cf. Lopez* v. *Found. Reserve Ins. Co., Inc.*, 98 N.M. 166, 171, 646 P.2d 1230, 1235 (1982).  Accordingly, a complaint alleging breach of an insuring agreement or seeking a declaration that an insuring agreement provides the asserted coverage must allege sufficient facts to show that the claims fall within the policy's coverage.

In this diversity case, New Mexico substantive law applies.  *Taos Ski Valley, Inc.* v. *Nova Cas. Co.*, 153 F. Supp. 3d 1351, 1353 (D.N.M. 2015), *aff'd*, 705 F. App'x 749 (10th Cir. 2017).   Under New Mexico law, insurance policies are "construed according to customary principles of contract interpretation."  *Dockery* v. *Allstate Ins. Co.*, No. 19-cv-0190-RB-GJF, 2020 WL 59885, at *3 (D.N.M. Jan. 6, 2020) (quoting *Carolina Cas. Ins. Co.* v. *Nanodetex Corp.*, 733 F.3d 1018, 1022 (10th Cir. 2013)).   Policy terms are applied as defined in the document or, when not defined, read in their ordinary, popular, and contemporary sense. *Battishill* v. *Farmers Alliance Ins. Co.*, 127 P.3d 1111, 1113–14 (N.M. 2006).  If, after review of the policy as a whole, a term is ambiguous because of internal contradictions or illogical provisions, or when a matter is not addressed or can be reasonably interpreted under multiple meanings, the policy is construed against the insurer.  *See id.* at 1115.  Disagreement between the parties, however, does not create ambiguity, nor should language be strained to give rise to ambiguity where none exists.  *Id.*

---

over the claims of the non-resident putative class members at the appropriate time, should the Complaint survive this motion to dismiss.

Where, as here, the insured cannot meet its burden to show that the policy provides the claimed coverage, courts in this District will dismiss the complaint. *See Mortensen* v. *Liberty Mut. Ins.*, No. CV 18-1121 KK/SMV, 2019 WL 1571730, at *2, *6 (D.N.M. Apr. 11, 2019) (dismissing claim that insurer was "liable for breach of contract for failing to compensate him for property damage" because theft of insured's car did not constitute "property damage" under uninsured motorist policy); *Taos Ski Valley*, 153 F. Supp. 3d at 1352–54 (dismissing complaint because policy's owned property exclusion supported denial of coverage for cleanup of contamination); *New Mem'l Assocs.*, 973 F. Supp. at 1029–31 (dismissing claim for breach because action for which plaintiff sought defense and indemnity was excluded from coverage).

### A. The Business Income and Extra Expense Claims Should Be Dismissed Because the Cafe Did Not Suffer Direct Physical Loss or Damage.

Plaintiff does not assert a claim that falls within the Policy's coverage under the Business Income and Extra Expense Endorsement. The plain language of the Policy provides that such coverage applies only when a suspension of Plaintiff's operations is caused by "direct physical loss of or damage to" property at the insured's premises. (Ex. A at 38–39.) Because the Complaint does not plausibly allege that property at Plaintiff's premises suffered any direct physical loss or damage, and attributes Plaintiff's suspension of business (and resulting losses) to the Closure Orders, not property damage, no coverage is available.

The Policy expressly and unambiguously provides that business income and extra expense losses are covered *only* if those losses result from *physical* loss or damage. Under the plain, ordinary meaning of the word, for loss or damage to be "physical," it must be "tangible" or "material." *See*, *e.g.*, *Physical*, *Black's Law Dictionary* (11th ed. 2019) (defining "physical" as "[o]f, relating to, or involving material things; pertaining to real, tangible objects"). As the

leading treatise on insurance law provides, the "requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."  10A *Couch on Insurance* § 148:46.

Although New Mexico courts have not addressed the issue, the weight of authority considering business interruption claims similar to Plaintiff's has held that the "critical policy language here—'direct physical loss or damage'—similarly, and unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage."  *Newman Myers Kreines Gross Harris, P.C.* v. *Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014).  Consistent with that authority, the Tenth Circuit has concluded that purely economic losses are not "direct physical loss or damage" to property that triggers business interruption coverage.  *See S. Hospitality, Inc.* v. *Zurich Am. Ins. Co.*, 393 F.3d 1137, 1142 (10th Cir. 2004) (rejecting claim for hotels' business income loss under "dependent property" clause in policy governed by Oklahoma law).  *See also, e.g.*, *Port Auth. of N.Y. & N.J.* v. *Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) ("In ordinary parlance and widely accepted definition, physical damage to property 'means a distinct, demonstrable, and physical alteration' of its structure."); *Mama Jo's, Inc.* v. *Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("[D]irect physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.").  Business income and extra expense claims under the

Policy language at issue here are thus compensable only when the suspension of business was caused by a physical alteration to, or a demonstrable change to, the insured's property.

Here, Plaintiff pleads nothing of the sort. The Complaint does not—and cannot—allege any facts showing that COVID-19 caused direct physical loss of or damage to the Cafe, and for good reason: the Cafe did not report any such direct physical loss or damage, or even the presence of the virus or any infected employee, when it provided notice of the claim to Continental. (*See* Ex. B at 1–2.) Nor does the Complaint allege that the coronavirus was found at the Cafe or that there was an infected employee or customer who could have transferred the virus to the Cafe. Instead, Plaintiff simply asserts in conclusory fashion that COVID-19 caused physical damage to its property (Am. Compl. ¶ 35), without saying how it was damaged, and quotes a 2006 industry group statement suggesting that viruses can sometimes contaminate property, depending on "the nature of the property itself" (*id.* ¶ 23).

Even if (contrary to fact and the Complaint) the coronavirus had been present on Plaintiff's premises, that would still be insufficient to plead and prove physical loss or damage. According to CDC guidelines, "[c]oronaviruses on surfaces and objects naturally die within hours to days" and can be removed with "[n]ormal routine cleaning with soap and water" or killed with disinfectants. *See CDC Reopening Guidance for Cleaning and Disinfecting Public Spaces, Workplaces, Businesses, Schools, and Homes*, cdc.gov/coronavirus/2019-ncov/community/reopen-guidance.html (last visited June 14, 2020).[5] The fleeting presence of a virus

---

[5]   A study in the *New England Journal of Medicine* found that the coronavirus that causes COVID-19 could survive on surfaces for four to 72 hours, depending on the surface material. *See Aerosol and Surface Stability of SARS-CoV-2 as Compared with SARS-CoV-1*, N. Engl. J. Med. 2020, 382:1564–67, https://www.nejm.org/doi/full/10.1056/NEJMc2004973. According to CDC guidance, "[c]ompanies do not necessarily need to close after a person

that can survive on surfaces for only a few hours or days, and can be easily removed through ordinary cleaning or disinfectants, cannot cause physical loss or damage that would render property unusable or uninhabitable.  *See Mama Jo's*, 2018 WL 3412974, at *9 (finding no direct physical loss or damage where business remained functional but required additional cleaning, noting that "cleaning is not considered direct physical loss"); *Mastellone* v. *Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1144–45 (Ohio Ct. App. 2008) (holding that mold contamination that could be remediated through standard cleaning procedures was not "direct physical loss or damage"); *see also* Ex. L, *Social Life Magazine, Inc.* v. *Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC), Tr. at 4:25–5:4 (S.D.N.Y. May 14, 2020) (transcript of preliminary injunction hearing) (in action concerning alleged property damage caused by COVID-19, court stated at oral argument:  "There is no damage to your property. . . . [COVID-19] damages lungs.  It doesn't damage printing presses.").  And if, as Plaintiff appears to allege, Plaintiff closed the Cafe because of the presence of COVID-19 *in the State*, that suspension of operations could not have been the result of "actual, demonstrable harm of some form" to property *at the insured's premises*, as the Policy requires.  *See Newman Myers*, 17 F. Supp. 3d at 331.

Indeed, although Plaintiff now halfheartedly attempts to tie the Cafe's closure to the "presence" of the virus somewhere, and claims that the presence of a virus "can constitute"

---

with confirmed or suspected COVID-19 has been in a company facility. . . . Once the area has been appropriately disinfected, it can be opened for use."  *CDC Frequently Asked Questions, Cleaning and Disinfection*, https://www.cdc.gov/coronavirus/2019-ncov/faq.html #Cleaning-and-Disinfection (last visited June 14, 2020); *see CDC Cleaning and Disinfection for Community Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/ organizations/cleaning-disinfection.html (last visited June 14, 2020) (noting that EPA-registered household disinfectants (such as bleach, Lysol®, and hydrogen peroxide) are effective to kill the coronavirus).

property damage, the Cafe's website and Facebook page make clear that the Cafe's closure was not caused by property damage at the insured's premises—or even by the Closure Orders, which expressly permitted restaurants like the Cafe to remain open for carry-out and delivery service—but by Plaintiff's voluntary decision to close to help control the virus's spread.  (Am. Compl. ¶¶ 23, 29–34; Exs. C–D, E–K.)  The Cafe's website and Facebook page confirmed that Plaintiff "decided to close the restaurant" "[i]n an effort to keep [the Cafe's] valued clientele, staff and . . . families safe during the current COVID-19 outbreak and to do [its] part in contributing to flatten the curve."  (Exs. C–D.)

Moreover, the Business Income and Extra Expense coverage Plaintiff seeks extends only through the "period of restoration."  This period "[b]egins with the *date of direct physical loss or damage*" and ends on the earlier of the "date when the property at the described premises should be *repaired, rebuilt or replaced* with reasonable speed and similar quality; or the date when business is resumed at a new permanent location."  (Ex. A at 33 (emphases added).)  That the coverage does not begin until the "direct physical loss or damage" occurs and ends when the property is "repaired, rebuilt or replaced" confirms that, without direct physical loss or damage, there is no coverage at all.  *See Phila. Parking Auth.* v. *Fed. Ins. Co.*, 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005) (terms "'rebuild,' 'repair,' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature"); *Newman Myers*, 17 F. Supp. 3d at 332 ("The words 'repair' and 'replace' contemplate physical damage to the insured premises."); *see also Romero* v. *Hartford Cas. Ins. Co.*, No. 1:16-cv-1335-RB-LF, 2017 WL 8220447, at *9 (D.N.M. 2017) (undisputed that policy provided coverage for lost business income "for the period required to make physical repairs to the damaged property").

Plaintiff does not allege any physical damage to the Cafe requiring repair, rebuilding, or replacement.  Aside from using the phrase in a handful of paragraphs (*see, e.g.*, Am. Compl. ¶¶ 21, 24, 35), the Complaint does not even plead a "period of restoration" or specify the repairs necessitated by any supposed property damage.  Plaintiff's claims under the Business Income and Extra Expense Endorsement (Counts I, III, V, and VII) therefore should be dismissed.

**B.      Plaintiff's Civil Authority Claims Should Be Dismissed Because Plaintiff Cannot Allege Any of the Elements of Those Claims.**

Plaintiff also cannot recover under the Civil Authority Endorsement of the Policy because the Closure Orders were not issued due to direct physical loss of or damage to property other than the Cafe and did not prohibit access to the Cafe.  (*See* Ex. A at 64 (allowing recovery of lost income and necessary expenses incurred by "action of civil authority that prohibits access to the described premises" only when that action is "due to direct physical loss of or damage to property" at other locations and caused by a Covered Cause of Loss).)  *See also generally* 10A *Couch on Insurance* § 152:22.

As a threshold matter, to trigger coverage under the Policy, the civil authority action must have been *due to* direct physical loss or damage sustained at another property.  (Ex. A at 64.)  Civil authority coverage is intended to cover lost business income when access to the insured's property is prohibited by an order issued as a result of direct physical loss of or damage to other property.  For example, coverage may apply if a "building next door to [an insured] theater is damaged by fire; for safety reasons, the civil authorities issue an order closing the [insured] theater during repairs to the adjacent building."  *Syufy Enters.* v. *Home Ins. Co. of Indiana*, No. 94-0756 FMS, 1995 WL 129229, at *2 n.1 (N.D. Cal. Mar. 21, 1995)*; see also*

*Narricot Indus., Inc.* v. *Fireman's Fund Ins. Co.*, No. CIV.A 01-4679, 2002 WL 31247972, at *4–5 (E.D. Pa. Sept. 30, 2002) (coverage applied when, due to downed electrical lines and flooded water and sewer systems, town required industrial plants to suspend operations and barred non-emergency personnel access to road on which insured's plant was located).

Here, the Closure Orders do not mention any actual property damage and, as Plaintiff admits, their purpose was "to minimize the spread of COVID-19" and "to protect the health, safety, and wellbeing of residents of the State of New Mexico."[6] (Am. Compl. ¶¶ 31–32; *see generally* Exs. E–K.) Plaintiff does not and could not allege that the Closure Orders were "due to" actual direct physical loss or damage anywhere. And even if one were to interpret the Orders as intended in part to prevent *future* property damage, an order seeking to prevent potential future damage does not give rise to a civil authority claim. *See United Air Lines, Inc.* v. *Ins. Co. of State of Pa.*, 439 F.3d 128, 134–35 (2d Cir. 2006) (finding no civil authority coverage for airline at Washington, D.C. airport after flights halted after 9/11 because "the government's subsequent decision to halt operations at the Airport indefinitely was based on fears of future attacks"). "When . . . the only relevance of prior damage to other property in deciding whether to issue a civil authority order that would preclude access to the insured's property is to provide a basis for fearing future damage to the area where the insured property is located, the causal link between the prior damage and the civil authority order is missing." *S. Texas Med. Clinics, P.A.* v. *CNA Fin. Corp.*, No. H-06-4041, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008) (no

---

[6]   Although the Public Health Emergency Orders state that "the further spread of COVID-19 in the State of New Mexico poses a threat to the health, safety, wellbeing and property of the residents of the State," the orders do not refer to any actual property damage caused—or threatened—by COVID-19. (Exs. F–I, K.) Even if they did, any such reference would not change the scientific fact that the virus does not cause property damage and, according to the CDC, can be easily cleaned off surfaces. *See supra* pp. 16–17.

coverage when required evacuation of county was due to fear that hurricane would hit nearby, even though fear was in part based on damage already caused to property in Florida).

In addition, for a civil authority claim to succeed, access to the covered premises must be "prohibited," which unambiguously means a complete bar to entry. *S. Hospitality*, 393 F.3d at 1140–41 (citing cases from various states). When access to the insured's property is merely hampered or discouraged, civil authority coverage does not apply. *See Ski Shawnee, Inc.* v. *Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at \*1, \*5 (M.D. Pa. July 6, 2010) (no coverage when order closed main road that 70 percent—but not 100 percent—of patrons used to access ski resort); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP* v. *Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at \*6 (M.D. La. Aug. 29, 2007) (claim failed when plaintiff closed its office to comply with advisories recommending that residents remain home after hurricane despite no orders forbidding or blocking access to premises); *Abner, Herrman & Brock, Inc.* v. *Great Northern Ins. Co*., 308 F. Supp. 2d 331, 335–36 (S.D.N.Y. 2004) (after full prohibition of access lifted, plaintiff had no civil authority claim even though traffic restrictions continued to hamper access to premises). And unless the civil authority action targets the insured's property, a claim cannot succeed even if the closure of other businesses ultimately causes a loss of income to the insured. *S. Hospitality*, 393 F.3d at 1140–41 (no recovery after 9/11 for hotel operator because, although FAA's order grounding planes greatly depressed hotels' business, it did not close hotels).

A California case illustrates these principles. In *Syufy Enterprises* v. *Home Insurance Co. of Indiana*, 1995 WL 129229, at \*1, the court denied a business interruption claim by a movie theater operator that had suspended its business operations when, following the

Rodney King verdict, civil authorities in several large cities imposed a dawn-to-dusk curfew to quell potential rioting and looting.  The policy in question covered business income loss where "as a direct result of damage to or destruction of property adjacent to the premises herein described by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil authority."  *Id.*  The court held that the civil authority provision was not triggered for two reasons:  first, no order ever "*specifically* prohibited any individual from entering a theater," and second, the policy required that the civil authority order must be "a *direct result* of damage to or destruction of property adjacent" to the insured's property, not a curfew imposed to *prevent future* rioting and property damage.  *Id.*, at *2 (emphases in original).

Where, as here, a government issues orders that explicitly authorize access to businesses like the Cafe; the orders were not issued as a result of physical loss or damage; the purpose of the orders was to prevent infection and avoid future harm; and the alleged harmful agent was a coronavirus that does not cause direct physical loss of or damage to property, Plaintiff cannot recover under the Policy's Civil Authority Endorsement for closing its doors. That the Closure Orders Plaintiff cites specifically permitted restaurants to continue delivery and carry-out service is dispositive.  (*See* Ex. A at 64; Ex. I at 2, 4 (naming among essential businesses that may remain open "[r]estaurants, but only for delivery or carry out"); Ex. K at 3, 5 (same).)  The Closure Orders permitted employees to enter the premises to prepare menu items and customers to pick up their carry-out orders at the Cafe.  The Closure Orders thus limited activities at the premises by prohibiting on-site dining (*see* Am. Compl. ¶ 33) but did not prohibit *access*.  *See Abner, Herrman & Brock,* 308 F. Supp. 2d at 335–37.  Finally, to the extent that the Closure Orders might have reduced the volume of customers patronizing the Cafe, a loss of

profits from reduced customer volume is not compensable under a civil authority provision.  *See*

*United Air Lines*, 439 F.3d at 134–35; *Ski Shawnee*, 2010 WL 2696782, at *5.

Under a plain reading of the Policy, and consistent with established authority,

Plaintiff has no claim under the Civil Authority Endorsement, and Counts II and VI of the

Complaint should be dismissed.

**C.     The So-Called "Sue and Labor" Provision
        Does Not Confer Coverage under the Policy.**

For the insured to recover mitigation expenses, "the law is clear that costs must

relate to a covered cause of loss."  *RK Mech. Inc.* v. *Travelers Prop. Cas. Co. of Am.*, 944 F.

Supp. 2d 1013, 1027 (D. Colo. 2011).  Unless the insured's property has suffered damage from a

covered cause of loss, the insured is under no obligation to the insurer to minimize or prevent

further loss, and the insurer has no obligation to repay the insured for its expenses incurred in

protecting its property.  *See Ski Chalet Village Owners Club Inc.* v. *Employers Mutual Casualty*

*Co.*, No. 3:16-CV-20-TAV-HBG, 2016 WL 6892759, at *4 (E.D. Tenn. Nov. 22, 2016) (finding

that mitigation provision did "not independently create coverage for damage" to swimming pool

excluded under policy, "but rather . . . it is a condition precedent to obtaining coverage in

situations otherwise covered by the insurance policy").  The Policy makes this predicate crystal

clear:  it defines what the insured must do "in the event of loss or damage to Covered Property,"

and instructs the insured to "[t]ake all reasonable steps to protect the Covered Property from

further damage" and recover its associated expenses, provided that the loss or damage is from "a

Covered Cause of Loss."  (Ex. A at 24.)

Here, for the reasons set forth in Part II.A.–B. above, the Policy does not cover

Plaintiff's alleged losses.  Plaintiff has not claimed—and cannot allege—direct physical loss of

or damage to its property, or to other property, that would trigger coverage under the Business Income and Extra Expense Endorsement or the Civil Authority Endorsement.  Thus, Plaintiff was under no obligation under the Policy to minimize a covered loss, and therefore Continental is under no obligation to repay any mitigation expenses incurred.  *See RK Mech.*, 944 F. Supp. at 1025 ("[A]n insured's ability to recover mitigation costs under a sue and labor clause is tied to the insurer's obligations under the general insuring provisions of the policy."); *Ski Chalet Village Owners Club Inc.*, 2016 WL 6892759, at *4 (conclusion that mitigation provision created coverage "would permit the insured to acquire coverage for covered property, regardless of the cause of loss, merely by taking and documenting steps to protect the property," which "would render the exclusionary cause provisions of the insurance contract meaningless, and substantially inhibit the objectives of the insurance contract as a whole").

The Complaint's allegations with respect to Plaintiff's purported costs are also plainly insufficient.  Plaintiff does not plead what costs, if any, it incurred, beyond vague references to "expenses."  (*See, e.g.*, Am. Compl. ¶¶ 83, 114(a).)  Even if lost revenue were an "expense"—which it is not[7]—Plaintiff does not explain how "suspending or limiting operations" prevented or mitigated imminent damage to its property.  *See Wash. Mut. Bank* v. *Commonwealth Ins. Co.*, 133 Wash. App. 1031, 2006 WL 1731318, at *4–5 (2006).  Nor does Plaintiff allege that closing its doors (rather than remaining open for carry-out or delivery service, as permitted by the Closure Orders) was undertaken for Continental's benefit.  *See id.* Counts IV and VIII of the Complaint should therefore be dismissed.

---

[7]   For example, *Black's Law Dictionary* defines "expense" as "*expenditure* of money, time, labor, or resources to accomplish a result"—not revenue forgone.  *Expense*, *Black's Law Dictionary* (11th ed. 2019) (emphasis added).

**D.    Because Plaintiff Has Not Alleged a Claim within the Policy's Grant of Coverage, the Purported Absence of a Virus Exclusion Is Irrelevant.**

The Complaint alleges that "[l]osses due to COVID-19 are a Covered Cause of Loss" because the Policy does not "exclude or limit coverage for losses from viruses."  (Am. Compl. ¶¶ 19–20.)  But Plaintiff has it backwards:  it is the insured's burden to show that the alleged loss falls within the policy's grant of coverage before exclusions even become relevant. *See Bhd. Mut. Ins. Co.* v. *Allstate Ins. Co.*, No. CIV 00-415 MV/LFG, 2000 WL 36739597, at *3 (D.N.M. Dec. 21, 2000) (not necessary to determine whether policy exclusion applied where insurer had no liability for claims against driver of car who was not covered person under policy); *see also Evanston Ins. Co.*, 2020 WL 249023, at *21 ("The insured party initially bears the burden to show that coverage is established under a provision of coverage . . . [t]he insurer then bears the burden of proving the policy excludes coverage.") (citing *Battishill*, 127 P.3d at 1113).  Plaintiff cannot carry that burden here because, as shown above, the trigger for coverage is "direct physical loss of or damage" to the insured's premises (for the Business Income and Extra Expense coverage) or other premises (for Civil Authority coverage).  *See supra* Part II.A.– B.  The insured must meet these threshold requirements to trigger coverage before there is any need to inquire whether there is an applicable exclusion.

Plaintiff's focus on the virus exclusion misses the mark for an additional reason: the Policy *does* contain an exclusion for loss or damage caused by "[c]ontamination by other than 'pollutants,'" which encompasses loss or damage caused by viruses.[8]  (Ex. A at 21, 34.)  But

---

[8]    Indeed, Plaintiff effectively concedes that its claims fall within this exclusion.  In arguing that "[t]he presence of virus or disease can constitute physical damage to property," Plaintiff relies on an ISO statement referring to "disease-causing viral or bacterial *contamination*," resulting in potential claims for the "cost of *decontamination*" of property that has "arguably

the Court need not address the scope of that exclusion on this motion, because Plaintiff has failed to allege a loss that falls within any grant of coverage under the Policy.

### E.        The Claims for Declaratory Relief Should Be Dismissed as Duplicative.

For the reasons discussed above, Plaintiff does not have coverage under the Policy, and all of its claims should be dismissed.  Plaintiff's claims for declaratory relief should be dismissed for the additional reason that they are duplicative of its breach-of-contract claims.

Plaintiff alleges that Continental breached the Business Income, Extra Expense, Civil Authority, and so-called "Sue and Labor" provisions of the Policy and also seeks declarations that it is entitled to "coverage" under those same provisions.  Because resolution of the contract claims necessarily requires determination of Plaintiff's rights under the Policy, the Court should dismiss the declaratory judgment causes of action (Counts V–VIII) as duplicative of the breach-of-contract causes of action.  *See Smith* v. *Auto-Owners Ins. Co.*, No. 15-cv-1153 SMV/GBW, 2017 WL 3223952, at *4 (D.N.M. July 17, 2017) (declining to issue declaratory judgment "on causation" when contract dispute over whether and to what extent plaintiff was entitled to insurance benefits remained question for trial).

*        *        *

Plaintiff's pleading is wholly deficient, and its deficiencies are incurable.  *See Am. Polysteel*, 2001 WL 37124939, at *2; *Tapia*, 10 F. Supp. 3d at 1247; *see also GFF Corp.*, 130 F.3d at 1384–85 (courts should not allow "a deficient claim [to] survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied").  Plaintiff cannot allege facts that would plead cognizable claims under the Policy because there was no

---

become *contaminated* (often temporarily) by such viruses and bacteria."  (Am. Compl. ¶ 23 (emphases added).

direct physical loss of or damage to the Cafe or any other property, and the Closure Orders clearly demonstrate that access to the insured's premises was never "prohibit[ed]."

## CONCLUSION

For the foregoing reasons, Plaintiff's Amended Class Action Complaint should be dismissed with prejudice in its entirety.

Dated:   June 15, 2020

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:          /s/ H. Christopher Boehning
                  H. Christopher Boehning

Joshua Grabel
HUSCH BLACKWELL LLP
2415 E. Camelback Road, Suite 420
Phoenix, Arizona  85016
Telephone:  (480) 824-7883
Facsimile:  (480) 824-7905
josh.grabel@huschblackwell.com

David Timmins
HUSCH BLACKWELL LLP
1900 N. Pearl Street, Suite 1800
Dallas, Texas  75201-2995
Telephone:  (214) 999-6185
Facsimile:  (214) 999-6170
david.timmins@huschblackwell.com

H. Christopher Boehning
Elizabeth M. Sacksteder
Daniel H. Levi
Hallie S. Goldblatt
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
cboehning@paulweiss.com
esacksteder@paulweiss.com
dlevi@paulweiss.com
hgoldblatt@paulweiss.com

*Attorneys for Defendant*
*Continental Casualty Company*

**STATEMENT OF CONFERRAL REGARDING
<u>GOOD-FAITH REQUEST FOR CONCURRENCE</u>**

On June 12, 2020, the parties conferred telephonically in good faith about Defendant filing this Motion.  Present were Hallie S. Goldblatt for Defendant and Rosalind B. Bienvenu for Plaintiff.  Plaintiff would not consent to the granting of this Motion, and Defendant has complied with its conferral obligations under L.R. 7.1(a).

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2020, I filed the foregoing electronically through the CM/ECF system, which caused all attorneys of record for Plaintiff who have appeared in this action to be served by electronic means, as reflected in the Notice of Electronic Filing.

<u>/s/ H. Christopher Boehning  </u>
H. Christopher Boehning