## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

————————————————

CAFE PLAZA DE MESILLA INC.,

      Plaintiff,

      v.                                No. 2:20-cv-354-KWR-KRS

CONTINENTAL CASUALTY CO.,

      Defendant.

### MEMORANDUM OPINION AND ORDER
### GRANTING DEFENDANT'S MOTION TO DISMISS

**THIS MATTER** comes before the Court upon Defendant Continental Casualty Co.'s Motion to Dismiss for Failure to State a Claim, filed on June 15, 2020. **Doc. 18**. The motion has been fully briefed and the Court deems it suitable for submission without oral argument despite Defendant's request. Having considered the parties' briefing, the record and applicable law, the Court grants the Motion to Dismiss.

### I.      BACKGROUND

Plaintiff Cafe Plaza de Mesilla Inc. is a New Mexico company operating as a restaurant and espresso bar in Mesilla, New Mexico. **Amended Complaint ¶¶ 1, 14**. Plaintiff brings this putative class action individually and on behalf of other members of a "nationwide" class against Defendant, an Illinois insurance company that writes, sells, and issues insurance policies, including in New Mexico[1]. ***Id.*, ¶ 15.**

---

[1] It is undisputed that Plaintiff purchased the insurance policy at hand from CNA Financial Corp. **Amend. Compl., ¶ 2; Doc. 18 at 6.** Defendant is a subsidiary of CNA, authorized to sell such insurance.

The Complaint alleges that Defendant issued an "all risk"[2] insurance coverage ("The Policy") to Plaintiff with a policy period running from February 11, 2020-February 11, 2021. ***Id.,*** **¶¶ 15- 16.** Plaintiff has not included a copy of the policy with the Amended Complaint. Defendant attaches a copy to its motion to dismiss and asks the Court to take judicial notice of the Policy and other documents relevant to the motion. Because Plaintiff has not opposed this request and the Court deems judicial notice of the documents appropriate in this instance, Defendant's request is granted.[3] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)) ("…The district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."); *Fay v. Hartford Ins. Co.*, 2019 WL 1014791, at *3 (D.N.M. Mar. 4, 2019).

The presence of COVID-19, a novel strain of coronavirus, has resulted in nationwide closure and suspension of businesses in efforts to slow the pandemic's spread. **Amend. Compl., ¶ 29**. On March 11, 2020, New Mexico Governor Michelle Lujan Grisham issued an executive order in response to the increasing infection rates in the state, titled the "Order Declaring a State of Public Health Emergency and Invoking the Powers Provided by All the Hazard Emergency Management Act and the Emergency Licensing Act," declaring a public emergency. ***Id.,* ¶¶ 30- 31.** In the ensuing months, the Governor and Department of Health Cabinet Secretary Kathyleen Kunkel ("Kunkel") issued additional orders extending the original order and directing certain public safety action, including limiting public gatherings. ***Id.,* ¶¶ 29-34.** On March 12, 2020,

---

[2] An "all-risk" policy is one that covers all losses of the type described unless the loss is specifically excluded. By contrast, a named-perils policy covers only losses attributable to expressly enumerated causes. *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 2020 WL 5742712, at *3, fn 2 (C.D. Cal. Sept. 10, 2020).

[3] Defendant asks the Court take judicial notice of "Continental's April 14, 2020 letter to Plaintiff setting forth its coverage determination (Ex. B), excerpts from the Cafe's Facebook page (Ex. C), a screenshot of the Cafe's website taken on April 20, 2020 (Ex. D), and the State closure orders (Exs. E–K)." **Doc. 18 at 3.** Plaintiff has not opposed this request and, thus, the Court takes judicial notice of these documents as well.

Kunkel issued a Public Health Emergency Order prohibiting "mass gatherings" of 100 or more individuals. ***Id*., ¶ 32.** The order exempted restaurants from the prohibition. ***See* Doc. 18-6, Ex. F**. On March 16, 2020, Kunkel issued an Amended Public Health Emergency Order limiting restaurants to 50% of maximum capacity. A subsequent order on March 19 further reduced "mass gatherings" to ten or more people in a single room but excluded "businesses . . or other entities engaged in commercial, industrial, charitable, or professional activities." **Doc. 18-8, Ex. H.** The order defined "local food vendors" as essential businesses and limited them to delivery and take-out services only. ***Id*.**

On March 23, 2020, Kunkel issued another order, directing all "non-essential" businesses to reduce their in-person workforce by 100%, but again permitted "essential" businesses, including restaurants, to remain open "provided they minimize their operations and staff to the greatest extent possible." **Amend. Compl., ¶ 33; Doc. 18-9, Ex. I.** Restaurants remained restricted to delivery and carry out services only. ***Id*.** The Governor and Kunkel subsequently issued further orders extending the requirements through April 30, 2020. **Docs. 18-10, 11, Exs. J-K.**

On March 19, 2020, Plaintiff posted an announcement on its official website advising customers that as of that day Plaintiff would be offering take-out services only and would be open from 9:00a.m.-1:30p.m. **Doc. 18-3, Ex. C.** On March 24th, Plaintiff posted another message on Facebook and its website, notifying clientele that "In an effort to keep our valued clientele, staff and our families safe during the current COVID19 outbreak and to do our part in contributing to flatten the curve, we have decided to close the restaurant until further notice." ***Id*., Exs. C-D.** The cafe appears to have remained closed until May 26th, 2020, when the restaurant advertised that it would be reopening for outdoor patio dining, with temporary hours running from 8:00a.m.-

1:00p.m. Thursday-Monday. *Id.* On May 28th, Plaintiff stated on Facebook that it would also be implementing curbside pickup services. *Id.*[4]

### Denial of the Insurance Claim

On or around March 18, 2020, Plaintiff filed an insurance claim for, among other things, lost business income following the onset of COVID-19 and the ensuing executive orders issued mandating suspension, closure, and limited operation of businesses. *Id.* **¶¶ 29-34, 38**. In a denial of claim letter dated April 14, 2020, Defendant noted that Plaintiff stated to it in a telephonic conversation that Plaintiff closed its operations on March 19, 2020 in response to the Governor's orders but that none of its employees had reported sickness at that time. Defendant concluded that Plaintiff had not demonstrated that the suspension of activity was due to "direct physical loss of or damage to the property" as required by the Policy to trigger coverage. *Id.* **¶ 39; Doc. 18-2, Ex. B.** The Complaint contends that the denial of coverage was improper in light of four provisions in the Policy, specifically the "Business Income, Extra Expense, Civil Authority, and Sue and Labor provisions." [5] **Amend. Compl., ¶ 28.**

The Policy does not contain any specific exclusions as to "viruses or communicable diseases" (*Id.*, ¶ 8), but does include exclusions for losses caused by "contamination by other than 'pollutants'." **Doc. 18-1, Ex. A at 21, 34.**

Plaintiff advances eight counts on its behalf and on behalf of a putative nationwide class; four counts for Breach of Contract (Counts I-IV), and four counts seeking declaratory relief

---

[4] Plaintiff also posted a flyer online on May 28th stating that it will be operating patio and pickup service as of May 23rd and another announcement on June 1st that it would be open for limiting dine-in services starting June 4th, 2020.
[5] The relevant terms of the insurance policy may be found under the "Businessowners Special Property Coverage Form." **Doc. 18-1, Ex. 1 at 16.** The Court will provide the relevant sections in the body of the Memorandum.
[6] For ease of reading, Defendant has attached page numbers to the upper right corner of Exhibit A. The Court refers to those page numbers in its citations.

(Counts V-VIII) that Plaintiff incurred covered losses pursuant to the four referenced provisions in connection with New Mexico's closure orders arising from the COVID-19 pandemic.

## II.     Legal Standard

### Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss, the Complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that the defendant acted unlawfully. *Id.* (citing *Twombly*, 550 U.S. at 556); see also *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court

reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). The degree of specificity "depends on context". *Id*. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III.    DISCUSSION

New Mexico law governs the insurance policy at hand. Under New Mexico law, insurance policies are treated "… as an ordinary contract to be construed according to customary principles of contract interpretation." *Carolina Cas. Ins. Co. v. Nanodetex Corp.*, 733 F.3d 1018, 1022 (10th Cir. 2013). A policy "must be construed as intended to be a complete and harmonious instrument designed to accomplish a reasonable end." *Safeco Ins. Co. of Am., Inc. v. McKenna*, 1977-NMSC-053, ¶ 18, 90 N.M. 516, 520, 565 P.2d 1033, 1037.

Initially, "[t[he insured party [] bears the burden to show that coverage is established under a provision of coverage." Only then does "the insurer then bears the burden of proving the policy excludes coverage." *Evanston Ins. Co. v. Desert State Life Mgmt.*, 434 F. Supp. 3d 1051, 1090 (D.N.M. 2020) (citing *Battishill v. Farmers Alliance Ins. Co.*, 2006-NMSC-004, ¶ 6, 139 N.M. 24, 127 P.3d 1111, 1113); *Lopez v. N.M. Pub. Schs. Ins. Auth.*, 1994-NMSC-017, ¶ 13, 117 N.M. 207, 870 P.2d 745, 749.

Where policy terms "have a common and ordinary meaning, that meaning controls in determining the intent of the parties." *United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, ¶ 10, 285 P.3d 644, 647. "If any provisions appear questionable or ambiguous, we will first look

to whether their meaning and intent is explained by other parts of the policy." *Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 20, 123 N.M. 752, 945 P.2d 970. That being said, an "ambiguity does not exist simply because a controversy exists between the parties, each favoring an interpretation contrary to the other." *Battishill v. Farmers All. Ins. Co.*, 2006-NMSC-004, ¶ 17, 139 N.M. 24, 28, 127 P.3d at 1115 (citing 2 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 21:11 (3d ed.2005)).

### Plaintiff Voluntarily Dismisses its "Sue and Labor" Claims

Plaintiff has stated that it "does not intend to pursue its 'Sue and Labor' provision claim and will voluntarily dismiss this claim in cooperation with Defendant." **Doc. 24 at 29, fn. 20.** Therefore, the Court dismisses Counts IV and VIII, which relate to Plaintiff's "Sue and Labor" claims.

### Business Income and Extra Expense Coverage

Plaintiff first alleges that there is coverage under the Business Income and Extra Expense provisions of the Policy. **Amend. Compl., ¶ 17.** The Policy contains a "Business Income and Extra Expense" Endorsement which provides the following:

1.  **Business Income**

[…]

   b. We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

**Doc. 18-1, Ex. A at 38.**

[…]

2.  **Extra Expense**

7

a. Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.

b. We will pay Extra Expense (other than the expense to repair or replace property) to:
    (1) Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations; or
    (2) Minimize the "suspension" of business if you cannot continue "operations."
c. We will also pay Extra Expense (including Expediting Expenses) to repair or replace the property, but only to the extent it reduces the amount of loss that otherwise would have been payable under Paragraph 1. Business Income above.

*Id*. **at 39**.

A "suspension" is defined as the "partial or complete cessation of [the insured's] business activities." *Id*. **at 35**. "Operations" means "the type of [the insured's] business activities occurring at the described premises and tenantability of the described premises." *Id*. **at 33.**

Defendant moves to dismiss on the grounds that the Complaint does not allege any "direct physical loss of or damage to property" as is required for coverage under the Business Income, Civil Authority, and Extra Expense provisions. **Doc. 18 at 14.** In its opposition, Plaintiff contends that the Policy language does not require "physical alteration to property" in the sense that the loss must be "tangible" or "structural," that the loss need not result in a "total shutdown" of the premises, and that "Courts have long held that contamination of a property, or the surrounding areas, by a virus-causing or noxious agent causes physical loss or damage when it is present in or around the property or permeates the interior of insured property." **Doc. 24 at 10, 16.** Based on a plain language review of the policy at hand, the parties' briefs, and recent, comparable caselaw, although the Court sympathizes with Plaintiff and other similarly situated businesses, the Court concludes that the motion to dismiss must be granted.

**<u>Direct Physical Loss</u>**

8

The parties dispute whether Plaintiff's allegations constitute a "direct physical loss" of the property as required by the Business Income and Expense provisions. Plaintiff does not contend that there was a "tangible," structural alteration to the property but posits that presence of or even the potential existence of COVID-19 on or nearby the premises is sufficient to trigger coverage. **Doc. 24 at 1, 17-19** ("The ubiquitous presence of the coronavirus particles at or near the premises, and the certainty that the virus particles would be present if businesses like Plaintiff's Cafe were not substantially shut down, cannot seriously be disputed. Because patrons congregated at the Cafe and its surrounding areas, it is reasonable to conclude that the coronavirus was and is physically inside the Cafe and physically on Cafe property."). Plaintiff also believes the absence of an express exclusion for viruses/pandemics is significant. *Id*. at 8-9.

Initially, Plaintiff finds fault with the Policy's failure to "define the phrase 'direct physical loss or damage to' [property]" and sets forth arguments interpreting the placement of the word "or" in "direct physical loss *or* damage to" and Defendant's purportedly deliberate decision "not to include" the words "tangible" or "structural" as modifiers of "loss" and "damage." ***Id.*** Plaintiff would have the Court read these terms, modified by the word "or," as "separate and distinct" in its consideration of whether coverage is triggered. ***Id.* at 9**. The Court declines to do so.

Upon a review of the plain, contemporary, and ordinary meaning of the words, the Court disagrees with Plaintiff. *Battishill v. Farmers All. Ins. Co.*, 2006-NMSC-004 at ¶ 11 ("The common and ordinary meaning of an undefined term should be based upon contemporary usage, where possible, because the issue is how a reasonable insured would understand the term at the time of purchase."). The Court is persuaded by Defendant's citation to other jurisdictions which address nearly identical arguments. *See e.g. Plan Check Downtown III, LLC v. AmGuard Ins. Co.* (2020 WL 5742712 (C.D. Cal. Sept. 10, 2020) (finding that although the plaintiff's argument

relating to modifying language was "not inconceivable" it nevertheless sought too much from a "handful of words."). Consistent with other courts evaluating the effects of coronavirus on damage to property in the insurance context, the Court finds that the phrase "direct physical loss" unambiguously requires something more tangible than what Plaintiff has set forth in its Complaint. *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020), *reconsideration denied*, *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2021 WL 83758 (N.D. Ill. Jan. 10, 2021) ("The words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure") (internal citation omitted); *see e.g. Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) (granting a motion to dismiss because the coronavirus did not cause a direct physical loss, and "the loss needs to have been a 'distinct, demonstrable physical alteration of the property.'"); *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB (Mich. 2020), ECF. No. 25, Ex. C (explaining that direct physical loss to property requires tangible alteration or damage that impacts the integrity of the property, and dismissing the case because plaintiff failed to allege that the coronavirus had any impact to the premises); *Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020 CA 002424 B, 2020 WL 4589206, at *5 (D.C. Super. Aug. 6, 2020) (granting summary judgment for insurer on restaurant's claims of lost business caused by coronavirus closure orders because there was no direct physical loss to property).

Plaintiff cites non-binding and factually distinct caselaw for the proposition that the loss of use of portions of the restaurant for their intended use in the face of these closure orders and the coronavirus qualifies as a "physical loss." *Id*. at 9-10. Plaintiff is correct that certain circumstances

dictate that a direct physical loss may occur without "tangible" destruction of property. For example, there are cases in which bacteria or harmful, noxious vapors were found to have caused direct physical loss without physically apparent damage. *See e.g. Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009) (holding that under Massachusetts law an odor "permeat[ing] the building" resulting in a loss of use of the building could constitute a physical injury to property*)*; *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020) (citing *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) which held that while mere installation of asbestos was not loss or damage, the presence or imminent threat of a release of asbestos would "eliminate[ ] or destroy[ ]" the function of the structure, thereby making the building "useless or uninhabitable")).

Plaintiff has also identified a recent case with substantially similar facts in which the Court held that the potential presence of COVID-19 could result in a physical injury and found that the complaint at least pled sufficient facts to defeat the defendant's motion to dismiss as premature. *See Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 2020 WL 5637963 (W.D. Mo. Sept. 21, 2020). While this Court has not found binding precedent on this matter, the Court nevertheless agrees with Defendant that *Blue Springs Dental Care, LLC*, represents an outlier case and that the weight of recent authority, created by the deluge of coronavirus-related insurance disputes, favors Defendant's position in almost uniformly rejecting Plaintiff's reasoning. *See e.g.*, *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2020 WL 5630465, at *2–3 (concluding the language "direct physical loss" "unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage. The words "direct" and "physical," which modify the word "loss," ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse

business consequences that flow from such closure.”); *10E, LLC v. Travelers Indem. Co. of Connecticut*, 2020 WL 5359653, at \*4-\*5 (C.D. Cal. Sept. 2, 2020) (holding that …[L]osses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase. Physical loss or damage occurs only when property undergoes a 'distinct, demonstrable, physical alteration.'"); *Malaube, LLC v. Greenwich Ins. Co.*, 2020 WL 5051581, at \*9 (S.D. Fla. Aug. 26, 2020) (finding persuasive that the plain meaning of the word "physical" within an insurance policy "excludes losses that are intangible")

The Court additionally rejects Plaintiff's conclusory argument that the widespread existence of the virus locally necessarily makes it "reasonable" to infer that the virus was present on the premises (**Doc. 24 at 1**) and finds unconvincing Plaintiff's efforts to distinguish cases cited by Defendant in its briefs. *See Id***. at 14-15**.  For example, Plaintiff seeks to distinguish Defendant's citation to *Mama Jo's, Inc. v. Sparta Ins. Co.*, (2018 WL 3412974, at \*1 (S.D. Fla. June 11, 2018) (*aff'd, Mama Jo's Inc. v. Sparta Ins. Co*., 823 Fed. Appx. 868 (11th Cir. 2020)), an action for lost business income caused by construction debris and dust permeating a restaurant from nearby road work. *Id*. at \*1. The Court held that there was no direct physical loss and that the plaintiff had not met its burden to demonstrate a business interruption had occurred because the restaurant remained open, customers and suppliers were able to access the restaurant, and the dust was readily removable by daily cleaning. *Id*. at \*9.  Plaintiff emphasizes that, in that action, the Court recognized that physical loss could exist where a property becomes "substantially unusable," and argues that here, its restaurant was rendered substantially unusable because COVID-19 is "not mere dust," is easily transmitted from person to person contact and "can constantly re-infect surfaces." **Doc. 24 at 15**. Plaintiff misses the mark though. It is undisputed that the New Mexico closure orders exempted restaurants from closing and permitted take-out and delivery services.

**See generally Doc. 18, Exs. E-K**. The orders did not bar employees or suppliers from entering the premises, or customers from placing orders. *Id***.** The Court finds fatal to Plaintiff's Complaint that it does not allege COVID-19 was ever present on its premises or that any of its employees were infected by it, and thus no physical alteration to the property took place. *See e.g. Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 5525171, at *5 (N.D. Cal. Sept. 14, 2020) (finding loss due solely to COVID-19 closure orders insufficient to maintain the action, "Because [Plaintiff's] complaint contains no allegations of a physical force which 'induced a detrimental change in the property's capabilities,'… [Plaintiff] has failed to establish a 'direct physical loss of property' under its insurance policy."); *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Cir. Ct. July 1, 2020); ECF No. 21-1 at 19-20 (holding that allegations of "a loss of business due to executive orders shutting down [ ] restaurants for dining" in response to the COVID-19 pandemic were insufficient to establish "direct physical loss of or damage to" the property.). Thus, the Court rejects Plaintiff's claim that the property was rendered "at least substantially unusable" within the exceptions delineated upon by *Mama Jo's, Inc*. **Doc. 24 at 15;** *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL at *9.

  Moreover, the Court agrees with Defendant that Plaintiff's claim is based purely on economic loss as a result of the closure orders, which did not actually direct full closure of the property and is outside the parameters of the coverage at hand. *See S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1142 (10th Cir. 2004); *10E, LLC v. Travelers Indem. Co. of Connecticut*, 2020 WL at *4 (" 'Detrimental economic impact' does not suffice" as physical loss or damage for coronavirus-related insurance claims). The Court finds meritless Plaintiff's last-ditch effort to establish a direct physical loss by arguing that a "corona effect" whereby potential customers' "social anxiety over public health a society's change in perception that restaurants may be unsafe

can create physical loss for purposes of commercial property coverage—even with respect to property that has purportedly sustained no physical injury or damage." **Doc. 24 at 19-20.** In any event, Plaintiff did include a "corona effect" allegation in its Complaint and the Court agrees with Defendant that hypothetical customer anxiety concerning COVID-19 does not equate to "direct physical loss of or damage to" property. **Doc. 28 at 13.**

Having determined that the perquisite of direct physical loss did not occur, Plaintiff's arguments under the Extra Expense provision similarly fail. The plain language of the Policy provision requires "[t]he 'suspension' must be caused by direct physical loss of or damage to property at the described premises." **Doc. 18-1, Ex. A at 38.** Here, no such allegation has been made. Rather, the Complaint merely alleges in conclusory fashion that the "presence of COVID-19 cased direct physical loss or damage… and caus[ed] a necessary suspension of operations during a period of restoration" and that "as a result of the presence of COVID-19 and the Closure Orders, Plaintiff and the other Class Members lost Business Income and incurred Extra Expense.) **Amend. Compl., at ¶¶ 35, 37.** Therefore, the Court concludes that Plaintiff has failed to meet its burden to show coverage is established under the provision of the Policy.

### Plaintiff is not Entitled to Civil Authority Coverage

For similar reasons, the Court determines that the facts alleged in the Complaint do not support recovery under the Civil Authority provisions. The Policy's "Civil Authority Endorsement" provision states:

> When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

**Doc. 18-1 Ex. A at 64.**

Defendant posits that Plaintiff is not entitled to this coverage because the closure orders were issued to minimize the spread of COVID-19 and not due to any direct physical loss or damage sustained at any adjacent property. **Doc. 18 at 19-20.** The Court agrees.

Simply put, Plaintiff has not plausibly alleged that the closure orders were issued for a purpose other than to prevent the spread of COVID-19, or that the orders caused a direct physical loss to neighboring properties, just as it has not plausibly pled direct physical damage to its own premises. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2020 WL at *7 (N.D. Cal. Sept. 14, 2020) ("Because the orders were preventative – and absent allegations of damage to adjacent property – the complaint does not establish the requisite causal link between prior property damage and the government's closure order.").

The Court rejects Plaintiff's premise that civil authority coverage is established because "The orders literally shut down all nonessential commercial activity in the entire state of New Mexico, which prohibited access to Plaintiff's Cafe." **Doc. 24 at 21.** Plaintiff has not actually alleged any specific instances of direct physical loss of or damage to property at other locations, and its conclusory assertion that "In this case, as pleaded, the prohibited access was caused by "direct physical loss or damage" to property other than Plaintiff's Café" (***Id.***) is insufficient absent more factual support. *See 10E, LLC v. Travelers Indem. Co. of Connecticut*, 2020 WL at *5.

### **Plaintiff was not Prohibited "Access" to the Premises**

Additionally, the Court agrees with Defendant that Plaintiff was not prevented from accessing its premises within the plain meaning of the Policy's terms. **Doc. 18 at 19-22.** Plaintiff argues that, contrary to Defendant's contention, it need not be completely barred from access to the premises for coverage to apply. **Doc. 24 at 22.** Plaintiff notes that the Policy does not define the phrase "prohibits access" and would have it look to the Policy in its entirety to find that partial

prohibition fall within the terms as well. ***Id.* at 23**. None of the orders effectively prevented Plaintiff from access to its business; the closure orders expressly exempted restaurants and food vendors from physical closure and permitted take-out and delivery services. Plaintiff's circular argument regarding physical/non-physical access by employees is unclear, unconvincing, and misses the point. ***Id.* at 24-25.** Consequently, Plaintiff has failed to allege that access to its premises was prohibited by government order and that it is entitled to civil authority coverage.

### The Lack of a Pandemic/Virus Exclusion is Irrelevant

Having determined that Plaintiff has not met its initial burden to demonstrate that it suffered a physical loss of or damage to its property covered by the Policy, the Court need not address Plaintiff's additional arguments that the absence of a virus/pandemic exclusion is relevant. *See Evanston Ins. Co. v. Desert State Life Mgmt.*, 434 F. Supp. at 1090 (burden is initially upon the insured to demonstrate that coverage is established); *Rose's 1, LLC v. Erie Ins. Exchange*, 2020 WL at *5 (addressing a similar argument for the defendant's failure to include a pandemic related exclusion, finding "…[E]ven in the absence of such an exclusion, Plaintiffs would still be required to show a 'direct physical loss.' Because they cannot do so, the Court grants summary judgment to Defendant.").

### Plaintiff's Claims for Declaratory Relief are Duplicative

Defendant asserts that Plaintiff's counts seeking declaratory relief are duplicative of the breach of contract claims and should be dismissed. **Doc. 18 at 26.** Plaintiff effectively acknowledges this to be the case but suggests that the Court need not dismiss the claims at this time. **Doc. 24 at 28.** ("There is no need for this Court to parse through Plaintiff's claims on a motion to dismiss; all parties and this Court are aware that Plaintiff will not be permitted to submit duplicative claims to the jury."). Plaintiff is correct that the Court need not parse through these

claims, but likewise it need not retain duplicative ones. Having ruled against Plaintiff on its breach of contract claims, necessarily resolving all issues identified in Plaintiff's declaratory judgment claims, the Court also dismisses those claims (Counts V-VII) as duplicative. *Vandelay Hosp. Group LP v. Cincinnati Ins. Co.*, 2020 WL 4784717, at *7 (N.D. Tex. Aug. 18, 2020) (dismissing the plaintiff's declaratory judgment claims as duplicative "Because the court's adjudication of the breach of contract claim will necessarily determine whether there is coverage and thereby determine all parties' rights with respect to the Policy and any claims arising out of its formation…."); *Cleveland v. Talent Sport, Inc.*, 2013 WL 2178272, at *3 (W.D. Okla. May 17, 2013) ("Because it appears that all issues identified for resolution by declaratory judgment will be decided in adjudicating his other claims, Plaintiff's declaratory judgment claim serves no useful purpose.").

### III.    CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED.**

**THEREFORE IT IS ORDERED** that Defendant's Motion to Dismiss **(Doc. 18)** is hereby **GRANTED** for the reasons described in this Memorandum Opinion and Order.

A separate judgment will be entered.

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**